666 P.2d 629

Gary WYNN, Claimant-Appellant,

v.

**J.R. SIMPLOT COMPANY, Employer,
Defendant-Respondent.**

No. 14168.

Supreme Court of Idaho.

July 6, 1983.

Keith A. Zollinger, Pocatello, for claimant-appellant.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a decision of the Industrial Commission denying a claim for workmen's compensation benefits. We reverse. The sole question presented is whether, as held by the Commission, the claimant failed to establish that his condition was caused by an "accident," i.e., a distinct mishap or event.

At a precise time on a precise day, i.e., 7:30 p.m. on March 17, 1980, claimant-appellant Wynn suffered a "documented left C–3–4, soft disc herniation," which the uncontroverted testimony of his attending physician indicated occurred "while he was working his front end loader" when, "in my medical opinion, forces exerted on his C–3–4 ligamentous structure, at that point in time, exceeded their limits and he suffered the resultant disc protrusion and disability."

Claimant Wynn had been an employee of respondent Simplot for approximately eleven years at the Gay Mine as a truck driver and heavy equipment operator. For the past five years, he had operated a front end loader and on the day in question was removing overburden rock and loading it in

trucks. The operation of the front end loader subjected claimant to almost continual and sudden jarring and shaking and required him to continually manipulate the mechanisms controlling the steering, gear changing and bucket control. At 7:30 p.m. of March 17, 1980, claimant experienced sharp pain in his left arm and shoulder as if he "had been hit with a hammer." He stopped work, rested and then attempted to return to work, but he could not stand the pain and was hospitalized at approximately 9:15 p.m. After a brief period in the hospital, claimant attempted to return to work; when the pain persisted he was referred to a neurosurgeon, who diagnosed his injury as a "probable left cervical soft disc herniation."

Approximately eight months later, the neurosurgeon performed surgery and found fibrous tissue binding down the nerve at C–3–4, but did not at that time note a disc rupture. That fibrous tissue was removed, following which claimant improved dramatically. However, three months later, while bending over to pick up a bottle cap, the identical symptoms reoccurred. A claim was subsequently made. Following a hearing thereon, claimant was denied benefits, the Commission stating:

"... the evidence does not establish that a ruptured disc was actually the cause of the claimant's symptoms, since a ruptured disc was not identified during surgery and the claimant's symptoms were apparently relieved by dissecting a fibrous tissue, which had apparently grown over the nerve root over a considerable period of time."

The Commission also held that there was no "separate or distinct injury which was causative of the claimant's problems." Thereafter, claimant moved for reconsideration, indicating that additional surgery had confirmed the existence of the disc herniation. The Commission denied the motion for reconsideration, stating as its reasons:

"The Commission's decision is based upon the failure to establish that the claimant's condition was caused by an accident arising out of and in the course of his employment, as defined by the Workmen's Compensation Law. No distinct mishap or event was established, which was causative of the claimant's problems."

The uncontradicted evidence is contrary to the Industrial Commission's finding that claimant's symptoms were not caused by a ruptured disc. The ruptured disc appeared upon the discogram prior to the first surgery; thereafter, it remained the surgeon's opinion that the cause of the symptoms was a disc rupture; while the disc rupture was not seen during the first surgery, the surgeon testified that nevertheless he knew there was a rupture present at a location not revealed by the surgery; medical documents submitted with the claimant's motion for reconsideration established that a second surgery performed on February 19, 1981 clearly revealed the existence of the rupture, which was then repaired. Hence, there is no evidence to support the finding of the Commission that claimant's symptoms were not caused by a disc rupture and that finding is reversed.

The Commission denied claimant's motion for reconsideration, stating, as aforesaid, that its decision resulted from claimant's failure to establish that his condition was caused by an accident in that "no distinct mishap or event was established, which was causative of the claimant's problems." There is no question but that on January 17, 1980, at 7:30 p.m., and for eleven years prior thereto, Wynn was and had been an employee of Simplot. At that time and on that date, Wynn was not on a lunch break, it was not after normal working hours, Wynn was not engaged in some recreational or social activity but rather he was laboring at his assigned task, to-wit: operating a front end loader to load overburden rocks into a truck. There is no question as to Wynn being a malingerer. Indeed, such possibility was raised and negated by the medical expert. There is no conflict in the evidence since Simplot offered no direct testimony nor any evidence of any kind.

Evidently, the holding of the Commission was based on its view that Wynn's

life had been very physically active, including recreational activities as a rodeo performer and hence his spine had, through repeated trauma, become predisposed to the injury which he ultimately sustained. Indeed, respondent on this appeal suggests that under the definition of "accident," it is required "that an injury to be compensible must be caused by an event or mishap which can reasonably be located as to time when and place where it occurred, conditions resulting from repetitive trauma over a period of time which is not reasonable are not compensible." We disagree.

As to the "event" or "mishap," however it might be characterized, there is no question but that it took place at 7:30 p.m., March 17, 1980, on the premises of the employer at the Gay open pit mine approximately 17 miles from Pocatello while Wynn was engaged in his usual work of operating a front end loader. Hence, the sole basis for the Commission's holding must be that what occurred on that day at 7:30 p.m. was not an "accident" as contemplated by Idaho's Workmen's Compensation Act.

We cannot agree with the Commission or Simplot's overly narrow and overly technical construction in view of the circumstances presented in the instant case. If the injury had occurred from the "event" which Wynn testified occurred some days earlier, *i.e.*, that he, while working, stepped down from the loader, slipped on some ice and fell, the Commission and the respondent would evidently concede that such constituted an "accident" for which claimant would be compensated. If a small pebble had been thrown up from the wheels striking Wynn in the face and causing him to jerk his body and the injury had resulted, we doubt not that such would be deemed an "accident" for which claimant should be compensated.

■ Although respondent Simplot invites the Court to engage in a semantic distinction analysis of whether an injury which results from repeated trauma falls within the category of occupational disease as distinguished from the category of industrial accident or neither, we decline the

invitation. It is enough to note that claimant here, as indicated by the medical evidence, suffered his injury at a particular time, at a particular place, while engaged in his normal and ordinary work for his employer. The fact that Wynn's spine may have been weak and predisposed him to a ruptured disc does not prevent an award since our compensation law does not limit awards to workmen who, prior to injury, were in sound condition and perfect health. Rather, an employer takes an employee as he finds him. *Miller v. Bingham County,* 79 Idaho 87, 310 P.2d 1089 (1957); *Lewis v. Department of Law Enforcement,* 79 Idaho 40, 311 P.2d 976 (1957); *Warlick v. Driscoll,* 68 Idaho 552, 200 P.2d 1014 (1948); *Teater v. Dairy-men's Cooperative Creamery,* 68 Idaho 152, 190 P.2d 687 (1948); *Cain v. C.C. Anderson Co.,* 64 Idaho 389, 133 P.2d 723 (1943); *Woodbury v. Arata Fruit Co.,* 64 Idaho 227, 130 P.2d 870 (1942); *Aranguena v. Triumph Min. Co.,* 63 Idaho 769, 126 P.2d 17 (1942); *Paull v. Preston Theaters Corp.,* 63 Idaho 594, 124 P.2d 562 (1942); *In re Soran,* 57 Idaho 483, 67 P.2d 906 (1937); *Beaver v. Morrison-Knudsen Co.,* 55 Idaho 275, 41 P.2d 605 (1935); *Fealka v. Federal Min. Etc. Co.,* 53 Idaho 362, 24 P.2d 325 (1933); *Strouse v. Hercules Min. Co.,* 51 Idaho 7, 1 P.2d 203 (1931); *Hanson v. Independent School Dist. 11,* 50 Idaho 81, 294 P. 513 (1930); *In re Larson,* 48 Idaho 136, 279 P. 1087 (1929).

■ As this Court has repeatedly stated, "If the claimant be engaged in his ordinary usual work and the strain of such labor becomes sufficient to overcome the resistance of the claimant's body and causes an injury, the injury is compensible." *Whipple v. Brundage,* 80 Idaho 193, 327 P.2d 383 (1958); *Lewis v. Dept. of Law Enforcement,* 79 Idaho 40, 311 P.2d 976 (1957). In *Hammond v. Kootenai County,* 91 Idaho 208, 419 P.2d 209 (1966), this Court affirmed a Commission award when a deputy sheriff died of a rupture or occlusion of a major vessel within the brain while he was engaged in normal routine activities of investigating an accident scene. Claimant had for some years suffered from hypertensive

cardiovascular disease. The Court, at 209, 419 P.2d at 210, quoting from *Pinson v. Minidoka Highway Dist.,* 61 Idaho 731, 106 P.2d 1020 (1940), stated:

> "To constitute an 'accident' it is not necessary that the workman slip or fall or that the machinery fail. An 'accident' occurs in doing what the workman habitually does if any unexpected, undesigned, unlooked-for or untoward event or mishap, connected with or growing out of the employment, takes place."

Also, in *Dawson v. Hartwick,* 91 Idaho 561, 428 P.2d 480 (1967), this Court affirmed a Commission award to a claimant whose injuries in part resulted from stooping to lift a case of empty bottles while he was working in his usual occupation as a bartender. Therein the court reiterated the principles announced in *Hammond. See also Harding v. Idaho Department Store,* 80 Idaho 156, 326 P.2d 992 (1958); *Lyon v. Catron County Com'rs,* 81 N.M. 120, 464 P.2d 410 (N.M.Ct. App.1969); *Hauswirth v. Industrial Commission,* 92 Ariz. 251, 375 P.2d 733 (1962); 1B Larson on Workmen's Compensation § 38.20 (1982).

In sum, this is not a case in which the Industrial Commission made findings and drew conclusions from controverted evidence, in which event we would ordinarily sustain the Commission. Rather, in the instant cause the evidence was uncontradicted and reveals that the claimant Wynn was injured while working at his usual and ordinary labor and the stress of that work overcame the resistance of his body which was admittedly predisposed to such injury. The injury produced the symptomatology and the disability from which claimant suffered.

We reverse the decision of the Industrial Commission and remand the cause to the Commission for the entry of an appropriate award to claimant. Costs to appellant.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

BAKES, Justice, dissenting:

The majority decision is based on one premise: "The uncontradicted evidence is contrary to the Industrial Commission's finding that claimant's symptoms were not caused by a ruptured disc." However, the evidence is not uncontradicted, even though presented entirely by the claimant. The evidence required the Industrial Commission to judge the credibility of particular witnesses in order to reach its conclusion. The claimant lost his case on the credibility issue. Therefore, the premise upon which the majority opinion is based is erroneous.

In appeals from the Industrial Commission, our scope of review is limited. Idaho Const. Art. 5, § 9; I.C. § 72–732. Where the Industrial Commission's findings of fact are supported by substantial, competent evidence, those findings will not be disturbed on appeal. *Lampe v. Zamzow's,* 102 Idaho 126, 626 P.2d 782 (1981); *Murray v. Hecla Min. Co.,* 98 Idaho 688, 571 P.2d 334 (1977); *Madron v. Green Giant Co.,* 94 Idaho 747, 497 P.2d 1048 (1972). In this case the Industrial Commission's findings of fact include the following:

> "The nerve root exiting between C–3 and C–4 on the left side was found to be enclosed with dense tissue. This tissue had apparently been binding down the nerve root, causing pain and other symptoms. . . . Following the surgery, the claimant had complete relief from symptoms for a period of time. The symptoms returned after the claimant stretched to pick up an object. The doctor continues to suspect a herniated disc at that level, which he believes is in a location different from that he was able to examine during the surgery. At the time of the hearing, the possibility that further surgery would be performed had not been determined.

> "IX

> "It was the opinion of Dr. Schossberger, that the claimant's cervical spine showed evidence of pre-existing degenerative changes which had been brought on by his lifestyle, including the nature of his work, over a period of time of operating equipment on rough terrain, with result-

ing jarring and bouncing, and his recreational activity of performing in rodeos. This resulted in cumulative wear and tear to the claimant's spine, creating preexisting weakness in that area. The doctor could not attribute the claimant's condition to a discrete identifiable injury, meaning that there was no separate or distinct injury which was causative of the claimant's problems. While the doctor was of the opinion that a disc had ruptured on the day the claimant was working with his front-end loader, and experienced sudden pain in his left shoulder and arm, no specific ruptured disc was disclosed during the surgery.... However, the Commission finds that the evidence does not establish that a ruptured disc was actually the cause of the claimant's symptoms, since a ruptured disc was not identified during surgery and the claimant's symptoms were apparently relieved by dissecting a fibrous tissue, which had apparently grown over the nerve root over a considerable period of time."

There is evidence in the record to support all of these crucial findings. All of the findings are taken directly from the testimony presented before the Industrial Commission.

The evidence before the commission indicated that the claimant's lifestyle was extremely strenuous and probably contributed a great deal to his bodily condition. Claimant had been involved in rodeo activities for twenty years. This activity resulted in severe punishment to his body. In addition, claimant had worked on heavy equipment for many years, resulting in much jarring and bouncing. Before the onset of symptoms that are the subject of this action, the claimant had been previously treated for back pain. In 1977, claimant suffered a low back injury at work. In 1979, a horse fell on claimant, causing back pain. In 1980, just weeks before the onset of symptoms claimant seeks to recover for here, claimant slipped on ice and suffered back pain. Thus, the commission's finding that claimant's spine had a pre-existing weakness is fully supported by the record.

The crucial part of the commission's findings were that a ruptured disc, supposedly suffered on the job, was not the cause of claimant's injury. Evidence presented at the hearing also supports this finding. The doctor testified that he did not discover the ruptured disc during corrective surgery. He did encounter fibrous tissue, which he dissected. After this surgery, claimant's symptoms entirely disappeared. This indicated to the commission that the cause of claimant's immediate symptoms and pain was not the ruptured disc supposedly suffered on the job, but rather the fibrous tissue which had built up over a number of years due to claimant's very rough lifestyle.

The commission's ultimate conclusions of law are also supported by evidence in the record.

"The Commission concludes that the claimant has failed to establish that his condition was caused by an accident arising out of and in the course of his employment, since no specific identified mishap or event has been identified as causing the condition for which the claimant seeks workmen's compensation benefits. Further, the Commission concludes that it has not been established that the claimant's condition is the result of an injury, as defined in the above-quoted provision.

"III

"The Commission concludes that the claimant has failed to sustain his burden of proof, that he suffered a personal injury caused by an accident arising out of and in the course of his employment. The claimant is not entitled to recover workmen's compensation benefits for the injury described in his claim."

The major testimony in the case was presented by claimant and his doctor. Their testimony is in itself contradictory, and thus the commission would be fully justified in believing only parts of that testimony. Although the claimant testified that his injury occurred at work, he also indicated that he was not doing anything unusual at the time the symptoms began,

and that nothing unusual happened, perhaps indicating to the commission that no accident occurred.

"Q. At that point, I take it, you didn't know what was bringing it on but it was there?

"A. No, sir. It happened all at once.

"Q. So whatever the pain was, you didn't know what brought it on but, at least, there was something wrong?

"A. Yes. Enough to scare hell out of me."

Claimant's testimony indicates even he did not know exactly what occurred. In addition, claimant's testimony indicates that he filled out a claim for medical benefits indicating that his condition was not brought on by an industrial accident. He later received weekly benefits under the medical insurance, not under the industrial accident insurance. In addition, claimant testified that after surgery his symptoms entirely disappeared. The symptoms did not appear again until nearly three weeks later, during a stretching motion which occurred outside of his work activities. Also, the evidence in the record indicated that claimant was not hurt quite so badly as he would have initially led the commission to believe. In the course of his testimony it was established that shortly after the claimed accident, while claimant was supposedly disabled from working because of the injury suffered on the job, he performed in rodeos approximately three times. Considering all the evidence, the commission, as the finder of fact, would be entitled to believe or disbelieve claimant's testimony, depending upon its determination of his credibility.

Testimony presented by the claimant's doctor was also equivocal. The doctor first testified that the claimant's symptoms were a direct continuation of the industrial accident. However, the doctor indicated that this conclusion was based on the history given to him by the claimant. Later, in his testimony, the doctor indicated that when he made his diagnosis he was not aware of the claimant's rodeo activities. The doctor's testimony indicated:

"[Q.] Now, Doctor, with—maybe you have already answered this—with the added history which I have given you today concerning his life style, particularly the rodeoing, would you agree with me that that also is contributory and would constitute accumulative trauma as well as the front end loader work?

"A. Yes.

"Q. You, of course, were not aware of that until today?

"A. Actually several days ago but not prior to that time."

It has always been the rule that the weight to be given to particular testimony, and a determination of the credibility of particular witnesses, is for the commission in the first instance. *Martin's Estate v. Woods,* 94 Idaho 870, 499 P.2d 569 (1972); *Comish v. Simplot Fertilizer Co.,* 86 Idaho 79, 383 P.2d 333 (1963); *Flasche v. Bunker Hill Co.,* 83 Idaho 420, 363 P.2d 1024 (1961). The commission's determination of a particular case is made on its assessment of the reliability, trustworthiness, and probable value of the evidence presented. Thus, the commission's determination of the weight and credibility to be accorded to particular evidence will not be overturned unless it is clearly erroneous. *Houser v. So. Idaho Pipe & Steel, Inc.,* 103 Idaho 441, 649 P.2d 1197 (1982). The determination of the question of whether a particular injury arises out of claimant's employment involves the weighing of evidence, and the evaluating of the credibility of the witness both from his demeanor and the content of his testimony. That function is exclusively within the province of the Industrial Commission; their function is to draw reasonable conclusions and inferences from the evidentiary facts presented. This Court is not privileged to substitute its judgment for that of the Industrial Commission. *Duerock v. Acarregui,* 87 Idaho 24, 390 P.2d 55 (1964). The question of whether a claimant's symptoms arose out of and in the course of his employment is a question of fact to be resolved by the Industrial Commission under the facts and circumstances of each particular case. *Teffer v. Twin Falls School Dist. No. 411,* 102 Idaho 439, 631

P.2d 610 (1981). On appeal this Court must view the evidence most favorably in support of the party who prevailed below. *Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51 (1979); *Furness v. Park,* 98 Idaho 617, 570 P.2d 854 (1977); *Brizendine v. Nampa Meridian Irr. Dist.,* 97 Idaho 580, 548 P.2d 80 (1976). Even the most casual reading of the majority opinion discloses that the majority has stated the facts in favor of claimant in order to justify its conclusion, contrary to this established rule.

Because a close examination of the record in the present case indicates that there was substantial, competent evidence to support the commission, this Court should affirm the commission's findings, instead of substituting its own judgment for that of the commission. Because the majority opinion, as written, tends to do just that, I must dissent.