934 P.2d 28

**Lenore KESSLER, on behalf of Robert F. KESSLER, (Deceased), Claimant–Appellant,**

v.

**PAYETTE COUNTY, Employer, and State Insurance Fund, Surety, Defendants–Respondents.**

No. 22583.

Supreme Court of Idaho, Boise, December 1996 Term.

March 14, 1997.

Jim Jones & Associates, Boise, for appellant. Jim Jones argued.

Alan G. Lance, Attorney General, David J. Lee, Deputy Attorney, Boise, for respondent. David J. Lee argued.

TROUT, Chief Justice.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Lenore Kessler, the Claimant–Appellant, seeks death benefits under Idaho's Worker's Compensation Law for the death of her husband, Robert F. Kessler (Kessler). Kessler, who was a Payette County reserve deputy sheriff on the warrants entry team, was shot to death while state law enforcement officers were serving an arrest warrant on Kessler. The Industrial Commission (Commission) denied benefits, reasoning that Kessler's death did not arise out of and in the course of his employment. The Commission further found that, even if Kessler's death arose out of and in the course of his employment, his death was proximately caused by his wilful intent to injure another and that his widow, thus, was not entitled to benefits.

At the outset, it must be noted that, for purposes of the Commission's decision, the parties stipulated to the events that occurred before Kessler entered the Payette County Sheriff's Office December 14, 1992. Additionally, the parties agreed that the Commission could consider the recitation, as relayed by the officers who served the arrest warrant on Kessler, of the events that occurred after Kessler entered the sheriff's office, although

Lenore Kessler did not agree to the truthfulness of that recitation.

A warrant had been issued December 13, 1992 for Kessler's arrest on charges of lewd and lascivious conduct with a minor, statutory rape, and rape December 13, 1992. The Payette County prosecutor requested that the Idaho state police crisis response team (CRT) serve the warrant. Because Kessler had served as a Green Beret and was a martial arts expert, the CRT and local law enforcement officers concluded that extra precautions were needed to ensure that the CRT could safely arrest Kessler. Accordingly, the officers devised a plan to deceive Kessler into appearing at the Payette County Sheriff's office, where members of the CRT would be positioned to arrest Kessler.

On December 14, 1992 at approximately 8:10 p.m., Sgt. Ronda Kincaid (Sgt. Kincaid) of the Payette Police Department contacted Kessler in person at his karate school. Sgt. Kincaid notified Kessler that the warrants entry team was assembling at the sheriff's office and that Kessler immediately should report for duty to the sheriff's office. In reality, Kessler was not scheduled for duty that night, and the summons simply was a pretext for arresting Kessler.

Approximately ten minutes after Kessler received Sgt. Kincaid's notification, Kessler arrived at the Payette County Sheriff's office in possession of the approved handgun Kessler was required to carry while on duty. Officers Steve Jones (Jones), Mike Nauman (Nauman), Wayne Marsh (Marsh), Dave Case (Case), and Jay Jensen (Jensen), all of whom were members of the CRT, were positioned inside the building to arrest Kessler when he arrived. The Commission then summarized in its findings the subsequent events:

> After Kessler entered through the double doors at the south entrance to the building, the automatic door locks were triggered by State Police Officer Dave Miller (not a member of the CRT team) who was present inside the building. Unaware of the fact that the doors had been locked, Kessler proceeded north down the hallway until Officer Jay Jensen appeared from a door on the west side of the hall, aimed his

weapon at Kessler and stated, "State Police, you are under arrest." Immediately after Officer Jensen issued this command, Officers Marsh and Case approached Kessler from the west side hall door directly adjacent to Kessler and then sprayed him with Capstun, a pepper mace substance. Kessler covered his face with both hands and retreated back towards the south entrance doors. Throughout his retreat Kessler was instructed by CRT team members to stop and position himself on the ground. When Kessler reached the south entrance doors he slowed and then lunged at the doors in an apparent attempt to exit the building. Upon realizing that the doors were locked, Kessler briefly hesitated, turned to his left, crouched down, drew his weapon and pointed it in the direction of the dispatch office door on the right side of the corridor where Officers Jones and Nauman were positioned. In response to Kessler's movement, Officers Jones, Nauman and Marsh opened fired [sic]. The evidence collected at the scene suggests that Kessler did not discharge his weapon.

The autopsy report revealed that Kessler suffered multiple bullet wounds, one of which proved fatal. The Payette County Sheriff, on behalf of Lenore Kessler, filed a notice of claim for worker's compensation benefits. Payette County, Kessler's employer, and the State Insurance Fund (SIF) contested the claim. As indicated above, the Commission denied benefits, and Lenore Kessler now pursues this claim for benefits, contending that Kessler was injured in the course and scope of his employment.

Based upon the officers' version of what happened after Kessler entered the building, the Commission independently found that it was foreseeable that Kessler would report, as requested, with his handgun, that Kessler resisted arrest, that Kessler drew his handgun, that Kessler was not engaged in any employment related duty when he resisted arrest, and that Kessler assaulted the officers who were serving the arrest warrant. The Commission, therefore, based its finding that Kessler's death was not caused by an accident arising out of or in the course of his employment upon the stipulated facts, the

officers' recitation, as well as the facts the Commission independently found. Although the Commission denominated these independent findings to be legal conclusions, they are factual findings, and we accordingly review them as factual findings.

## II.

### ISSUES ON APPEAL

#### A. Standard Of Review

■ It is particularly important to note that whether an injury arose out of and in the course of employment is a question of fact to be decided by the Commission. *Reinstein v. McGregor Land & Livestock Co.*, 126 Idaho 156, 879 P.2d 1089 (1994). Although this Court may review the Commission's factual findings, this Court must limit its review to determining whether the Commission correctly denied benefits after it applied the law to the relevant facts. *Morgan v. Columbia Helicopters, Inc.*, 118 Idaho 347, 796 P.2d 1020 (1990). This Court may not set aside findings of fact that are supported by substantial competent, although conflicting, evidence, *see* I.C. § 72–732(1); *Gradwohl v. J.R. Simplot Co.*, 96 Idaho 655, 534 P.2d 775 (1975), but may disturb the Commission's findings, if they are clearly erroneous. *Koester v. State Ins. Fund*, 124 Idaho 205, 208, 858 P.2d 744, 747 (1993). This Court additionally may not scrutinize the weight and credibility of the evidence relied upon by the Commission but must construe the evidence in the light most favorable to the party who prevailed before the Commission. *Darner v. Southeast Idaho In–Home Servs.*, 122 Idaho 897, 841 P.2d 427 (1992).

■ When reviewing questions of law, this Court exercises free review and may substitute its view for the Commission's view. *O'Loughlin v. Circle A Constr.*, 112 Idaho 1048, 739 P.2d 347 (1987); *Idaho Appellate Handbook* § 3.2.1 (Idaho Law Foundation, Inc., 1989). Thus, this standard governs this Court's review of whether the Commission, after finding that Kessler's death did not arise out of and in the course of employment, correctly denied benefits.

#### B. Arising Out Of And In The Course Of Employment

■ An injury that is compensable under the Worker's Compensation Act (the Act) must have been caused by an accident "arising out of *and* in the course of any employment" that the Act covers. I.C. § 72–102(15)(a) (1989) (emphasis added). Thus, the test for determining compensability is two-pronged, and the claimant must satisfy both elements to be entitled to compensation. *Devlin v. Ennis*, 77 Idaho 342, 348, 292 P.2d 469, 475 (1956). We also recognize that, when an injury occurs on an employer's premises, a presumption that the injury arose out of and in the course of employment arises. *Foust v. Birds Eye Div.*, 91 Idaho 418, 419, 422 P.2d 616, 617 (1967). Because Kessler died at the Payette County Sheriff's office, this presumption clearly applies, and, therefore, the SIF had the burden of producing evidence indicating that Kessler's injury did not arise out of or in the course of his employment. I.R.E. 301. *See also Evans v. Hara's, Inc.*, 123 Idaho 473, 478, 849 P.2d 934, 939 (1993).

■ A worker receives an injury in the course of employment, if the worker is doing the duty that the worker is employed to perform. *Kiger v. Idaho Corp.*, 85 Idaho 424, 380 P.2d 208 (1963) (quoting *Eriksen v. Nez Perce County*, 72 Idaho 1, 235 P.2d 736 (1951)). This prong of the test, therefore, examines the time, place, and circumstances under which the accident occurred. In arguing that Kessler's death did not occur in the course of employment, the SIF noted that Kessler was neither scheduled nor needed for duty the night he was shot and that drawing a gun and pointing it in the direction of fellow officers is not included in the duties a sheriff's deputy is employed to perform. The Commission agreed with the SIF's argument, specifically finding that Kessler was not engaged in performing any duty that he was employed to perform at the time he incurred the fatal injury. We believe that the officers' recitation, upon which the Commission was entitled to rely, as well as the Commission's independent findings of fact, constitute substantial competent evidence to support the Commission's finding that Kes-

sler's death did not occur in the course of employment. Because we may not set aside findings of fact that are supported by substantial competent, although conflicting, evidence, we affirm the Commission's finding that Kessler's death did not occur in the course of his employment. *See* I.C. § 72–732(2); *Gradwohl,* 96 Idaho at 655, 534 P.2d at 775.

◼◼◼◼ Our affirmation of the Commission's determination that Kessler's death did not occur in the course of employment necessarily requires denial of death benefits, despite the presumption announced in *Foust,* 91 Idaho at 419, 422 P.2d at 617, because Lenore Kessler's inability to prove this first prong precludes her from satisfying the two-pronged compensability requirement set forth in the Act. I.C. § 72–102(15)(a). Nonetheless, we briefly discuss the Commission's finding that Kessler's death also did not arise out of his employment. An injury is considered to arise out of employment when a causal connection exists between the circumstances under which the work must be performed and the injury of which the claimant complains. *Eriksen,* 72 Idaho at 6, 235 P.2d at 738. This prong of the compensability test examines the origin and cause of the accident. Consequently, an injury will not be considered to arise out of employment when the injury stems from a personal dispute, even if the employee was performing the duties required by the employment at the time of the injury. *Devlin,* 77 Idaho at 349, 292 P.2d at 472. The rationale underlying this rule is that an injury caused by an assault that would have occurred wherever the employee was found should not be compensable under the Act simply because the employee incurred the injury at the place of employment and during the hours of employment. *See id.* at 349–50, 292 P.2d at 472. Thus, to satisfy the causal connection required by *Eriksen,* Lenore Kessler must have established a probable connection between the circumstances leading to Kessler's death and those surrounding Kessler's employment by demonstrating that Kessler was shot because of exposure to a hazard to which he would not have been exposed outside his work environment. *See O'Loughlin,* 112 Idaho at 1051, 739 P.2d at 350.

◼◼◼ The Commission determined that the causal connection necessary to satisfy the standard announced in *Eriksen* was broken at the time Jensen told Kessler he was under arrest and further found that the circumstances of employment were not the cause of Kessler's fatal injuries. As with the Commission's finding that Kessler's death did not occur in the course of employment, the officers' recitation and the Commission's independent findings comprise substantial and competent evidence to support the Commission's determination that there was no causal connection between Kessler's death and the work he was required to perform as a deputy sheriff. Thus, we affirm the Commission's finding that Kessler's death also did not arise out of his employment.

◼◼◼ Whether the Commission properly denied death benefits after finding that Kessler's death did not arise in the course of or out of his employment is a question of law over which this Court exercises free review. *O'Loughlin,* 112 Idaho at 1051, 739 P.2d at 350. We believe the Commission properly found that Kessler's death neither occurred in the course of his employment nor arose out of his employment because substantial competent evidence supports those findings. Consequently, we conclude that the Commission was entitled to deny compensation. *See* I.C. § 72–102(15)(a).

Lenore Kessler argued on appeal that the Commission erred when it sua sponte applied I.C. § 72–208 and found that Kessler wilfully intended to injure Officers Jones and Nauman when Kessler pulled his weapon. Based upon our conclusion that the Commission properly denied compensation on the ground that Kessler's injury did not arise in the course of or out of his employment, we find it unnecessary to go further. Therefore, we decline to address the Commission's determination that Kessler wilfully intended to injure himself or others.

## C. Application Of I.C. § 72–228

◼◼◼ Lenore Kessler asserts that the Commission erred when it failed to consider the statutory presumption set forth in I.C.

§ 72–228. Under this provision, a presumption that an employee's injury arose out of the employment will arise when unrebutted prima facie evidence that the injury arose in the course of employment is presented. I.C. § 72–228. Because the Commission found that Lenore Kessler had not presented sufficient evidence to indicate that Kessler's death arose in the course of his employment, we have determined that the Commission was correct in not applying I.C. § 72–228.

### III.

### CONCLUSION

The Industrial Commission's decision to deny death benefits is affirmed. Costs on appeal to respondent.

JOHNSON, McDEVITT, SILAK and SCHROEDER, JJ., concur.