# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33342

CHERYL ANN STEVENS-MCATEE,
Personal representative of DAVID JOEL
MCATEE, deceased,

  Claimant-Appellant,

v.

POTLATCH CORPORATION, Employer,
and WORKERS COMPENSATION
EXCHANGE, Surety,

  Defendants-Respondents.

Boise, January 2008 Term

2008 Opinion No. 24

Filed: February 15, 2008

Stephen Kenyon, Clerk

Appeal from the Idaho Industrial Commission.

The decision of the Industrial Commission is <u>reversed</u> and the case is remanded.

Smith, Cannon & Bond, Lewiston, for appellant. Ned Cannon argued.

Randall, Blake & Cox, Lewiston, for respondent. Scott Chapman argued.

_____

HORTON, Justice.

Cheryl Ann Stevens-McAtee (Appellant), personal representative of the estate of Claimant David Joel McAtee (McAtee), deceased, appeals from an order of the Industrial Commission of the State of Idaho (Commission) denying McAtee worker's compensation benefits for the stated reason that he "*failed to show his herniated disc was caused by a compensable accident.*"

## I. FACTUAL AND PROCEDURAL BACKGROUND

McAtee started working for Potlatch Corporation (Potlatch) in 1999. He handled wood products by hand and drove a Hyster, which is an enormous specialized forklift used to move large stacks of lumber. His primary role was to move unfinished stacks from the yard to be fed into the planers. The work was fast-paced and strenuous. During a typical shift McAtee had to

manually pull from 100 to 400 spacer blocks off his loads of lumber. Each spacer block weighed between 70-75 pounds and was about eight-feet long. This required McAtee to mount and dismount his Hyster repeatedly. The driver's seat was located more than six feet off the ground. To provide stability when lifting large loads, the Hyster is unsuspended except for a spring loaded seat. McAtee was a big man, reaching over 6'3'' in height and weighing over 270 pounds. He claimed the seat suspension on the Hyster was insufficient for a man of his build and would bottom out when he hit bumps.

On March 9, 2004, McAtee experienced an onset of back pain, which increased in intensity throughout his shift to the point where he could no longer sit up straight. He reported his back pain to his supervisor as soon as he was able to contact him. McAtee's supervisor asked him to finish the final 45 minutes of his shift because the workload was high that night. McAtee acceded to the request. Following his shift, his back pain had reached the point where he could not tolerate standing up to do the dishes at home. The next morning Potlatch called McAtee and told him to go see a doctor before he reported back to work. McAtee did not have a doctor, so Potlatch referred McAtee to Dr. Greggain, a family practice physician whom Potlatch retained as a consultant on a contract basis for employee evaluations.

McAtee was evaluated by Dr. Greggain on March 11, 2004. Dr. Greggain ordered an MRI which revealed spinal degeneration and a herniated L5-S1 disc. McAtee's medical records indicate a prior history of back pain, minor injuries, and chiropractic care, but no evidence of previous disc herniation. McAtee was also seen by Dr. Greggain's partner, Dr. MacKay for follow-up care.

McAtee was referred by Dr. Greggain to Dr. Dietrich, an orthopedic specialist. Dr. Dietrich recommended conservative treatment including physical therapy and cortisone injections. The physical therapy was unsuccessful in improving McAtee's condition. Pain consultant Dr. Craig Flinders performed epidural steroid injections on McAtee. Dr. Flinders recommended surgery after the injections failed to alleviate McAtee's pain. Following the trial course of conservative treatment, Dr. Dietrich recommended surgical decompression and spinal fusion.

On March 29, 2004, McAtee filed a short term disability claim. On April 13, 2004, Workers Compensation Exchange (Surety) sent an inquiry form to Dr. Greggain. On the form, Dr. Greggain circled "no" in response to the question, "[o]n a more probable than not basis do

you feel that Mr. McAtee sustained an injury on March 9, 2004?" and elaborated in handwriting, "I believe this is a culmination of longstanding mechanical and degenerative changes that finally led to disc failure and nerve entrapment." One week later on April 20, 2004, Surety formally denied McAtee's claim. Potlatch stated that McAtee would not be released back to work unless he had the recommended surgical procedures performed. However, because McAtee was unable to pay for these surgical procedures out-of-pocket, he was never released back to work.

Following the denial of his claim, McAtee filed a worker's compensation complaint with the Commission on October 10, 2004. In addition, McAtee sought out Dr. Colburn for an independent medical evaluation as to the cause of his injuries. At the oral hearing on the matter, McAtee testified that on March 9, 2004, he felt a "funny feeling" in his lower back when his seat bottomed out after hitting a drain ditch with his Hyster. He also testified that he hit bumps and the drain ditch all the time. The referee found McAtee's testimony about hitting the drain ditch an uncredible improvement or enhancement over his earlier more vague accounts of March 9, 2004. The referee held that, in the absence of credible testimony, and considering McAtee's history of back pain, there was no other evidence linking the events of March 9, 2004, to his herniated disc. Therefore, McAtee's claim was denied by the Commission for the stated reason that "he failed to show that his herniated disc was caused by a compensable accident." McAtee filed a motion for reconsideration which was denied by the Commission. McAtee timely appealed to this Court.

Before this matter was argued before this Court, McAtee died from reasons unrelated to this claim. His mother, Cheryl Ann Stevens-McAtee, serving in the capacity of the personal representative of McAtee's estate, was substituted as the Appellant in this case.

## II. STANDARD OF REVIEW

This Court exercises free review over the Commission's legal conclusions and may substitute its view for the Commission's view. *Kessler ex. Rel. Kessler v. Payette County*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). Although this Court may review the Commission's factual findings, this Court must limit its review to determining whether the Commission correctly denied benefits after it applied the law to the relevant facts. *Id.* Whether an injury arose out of the course of employment is a question of fact to be determined by the Commission. *Id.* The Commission's factual findings will not be disturbed on appeal so long as they are supported by substantial and competent evidence. I.C. § 72-732; *Neihart v. Universal Joint Auto*

*Parts, Inc.*, 141 Idaho 801, 803, 118 P.3d 133, 135 (2005). Substantial evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Page v. McCain Foods, Inc.*, 141 Idaho 342, 344, 109 P.3d 1084, 1086 (2005). Credibility of witnesses and evidence is a matter within the province of the Commission. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). As such, the Commission's findings on weight and credibility will not be disturbed on appeal if they are supported by substantial and competent evidence. *Id.*

In making our determinations, this Court "must liberally construe the provisions of the worker's compensation law in favor of the employee, in order to serve the humane purposes for which the law was promulgated." *Jensen v. City of Pocatello*, 135 Idaho 406, 413, 18 P.3d 211, 218 (2000) (citing *Murray-Donahue v. Nat'l Car Rental Licensee Ass'n.*, 127 Idaho 337, 340, 900 P.2d 1348, 1351 (1995)).

## III. ANALYSIS

The issue in this case is whether the Commission's finding that "McAtee failed to show his herniated disc was caused by a compensable accident" was supported by substantial and competent evidence in the record. We hold that it was not. Consequently, we reverse the order of the Commission and remand for proceedings consistent with this opinion. Furthermore, we award McAtee attorney fees and costs because the denial of his claim was unreasonable.

**A. The Commission's conclusion that "McAtee failed to show his herniated disc was caused by a compensable accident" is not supported by substantial and competent evidence.**

We find two points of error in the Commission's determination that "McAtee failed to show his herniated disc was caused by a compensable accident." First, the Commission's conclusion that McAtee's testimony was not credible is not supported by substantial and competent evidence. Second, the Commission's conclusion that McAtee's testimony was the only evidence linking his herniated disc to March 9, 2004, is not supported by a review of the record.

1. The Commission's finding that McAtee's testimony was not credible is not supported by substantial and competent evidence.

The Commission's denial of McAtee's claim was largely based on the Referee's finding that McAtee's testimony was not credible because he "improved" or "enhanced" his testimony by adding the specific detail about hitting the drain ditch. At the oral hearing on this matter, McAtee testified as follows:

4

Q. So let's go back to March 9 now of 2004. So you start your shift, tell me what you did until the 5:45, 6:00 o'clock break?

. . . .

Q. Were you suffering or having any problems physically that day up until that 5:45 to 6:00 o'clock break?

A. Felt pretty good, was going really really [sic] a fast pace shift, felt pretty good, you know, I was warmed up, was you know, getting in my grove up [sic]. I'm driving along, screaming and got my radio turned up and cussing and hollering and jumping and you know, doing my regular thing. I talk to myself. I'm pretty much -- I mean there's other people out in the yard but I'm by myself, so I'll sing along to the radio or whatever the heck I do, you know.

. . . .

Q. Now, when did you -- when did you get hurt that day on that shift?

A. It was right after the break, breaks are ten minutes, it was like 5:45, 6:00, somewhere in there.

Q. And what happened?

A. Picked up a load of two by ten, was headed into the No. 2 planer, come across the yard, it was over here I picked it up, coming across, and there's a drain, there's a drain, a hole.

Q. How big is the drain, just if you can explain it because the court reporter can't see your hand gestures.

A. Two feet by three feet maybe. They repaved that section of the yard a couple of years ago, it was really really rough, and it used to have concrete barriers around it, but they took those out and never put them back. When they re-paved it, they didn't taper it smooth into the drain. It almost drops four to six inches down into that drain grate. And so I was coming across the yard, I hit it all the time, I hit bumps all the time. I hit the damn thing and cruise right in. But I was coming through, I hit it, and I -- I don't know how to describe it, I think I have written sore or tender or -- I don't know how to describe it. I had a strange feeling.

Q. Where?

A. Right down in the back of my -- my back of my back. I mean it wasn't -- it wasn't.

Q. High or low in your back?

A. Really down at the very bottom, down low. I can't say that it was like a knife going in, it was definitely something different. And I cruised on with my shift, I'm -- we were running like hell, run in, take the blocks off, keep going about it, you know, and it starts to get hurting.

Q. When did it start to hurt.

A. Shortly thereafter it started to continue through the whole shift to get worse, more painful -- towards the last break I mean it felt like there was -- I was being stabbed by a knife. It was radiating up through my shoulders, down my legs, I couldn't sit up straight. I was driving the lift truck like this, it was everything I could do to get out --

Q. When you say "like this" --

A. I was bent over, leaning over, because I couldn't sit up straight . . . Any ways, I tried to call the supervisor . . . but I tried to call him several times on the radio and couldn't get a hold of him.

Q. Over what time frame?

A. Within 30, 45 minutes of me hitting it and starting to experience the stuff, the pain and that, to up until the time I got a hold of him.

. . . .

Q. What did you tell him?

A. What I did, what happened . . . told him basically what I just said, he said are you going to be able to finish your shift and I says well, I'm going to do everything I can, I've been here dealing with it, what's 45 more minutes. And [he] says, great, I got to run, I got all this other stuff going, and I said okay. And that was that.

Q. So what did you do?

A. Finished my shift.

The Referee explained his findings on the weight and credibility of McAtee's testimony as follows:

McAtee's testimony at hearing differed substantially from the vague and general descriptions he offered for the first year after the alleged event. McAtee's recent "improvement" upon his description of the alleged event is not credible.

In *Painter v. Potlatch Corp.*, 138 Idaho 309, 313, 63 P.3d 435, 439 (2003), this Court noted that we have bifurcated the issue of the Commission's findings regarding credibility into two categories, "observational credibility" and "substantive credibility." There we stated:

Observational credibility "goes to the demeanor of the appellant on the witness stand" and it "requires that the Commission actually be present for the hearing" in order to judge it. Substantive credibility, on the other hand, may be judged on the grounds of numerous inaccuracies or conflicting facts and does not require the presence of the Commission at the hearing. The Commission's findings regarding substantive credibility will only be disturbed on appeal if they are not supported by substantial competent evidence.

*Id.* (internal citations omitted).

As permitted by I.C. § 72-506, the Commission adopted the findings of fact, conclusions of law, and recommendation of the Referee as its own. The Referee did not make any conclusions as to McAtee's demeanor on the stand. Therefore, his observational credibility is not in question. Rather the referee found his testimony was not credible because this improvement or enhancement of his story "differed substantially" from his previous accounts. Thus, the Referee made a substantive determination as to the credibility of McAtee's testimony.

6

As such, the Commission's findings regarding McAtee's substantive credibility will only be upheld if they are supported by substantial and competent evidence. *Id.*

We find that the Commission's conclusions as to McAtee's substantive credibility are not supported by the record. Although his descriptions as to the cause of his injury were more vague prior to oral hearing, McAtee consistently maintained that his injury arose from the jostling and vibrations of his forklift. The Minor Care Report from the St. Joseph Medical Center dated April 1, 2004 (only 3 weeks after the alleged accident), states the following: "David is a 36 year old gentlemen with magnetic resonance imaging proven L5-S1 disc bulge. He has been managing his back for the last few weeks, his initial injury to his back was a ***fork lift accident*** almost a month ago." Additionally, reports from S.P.O.R.T Physical Therapy Clinic dated May 18, 2004 (only 2 months, 9 days after the alleged accident), report the history of injury to be "***Driving Forklift – bouncing*** / lifting heavy blocks." On March 29, 2004 (10 days after the alleged accident), McAtee filed a short term disability claim and checked "yes" to the question "Did your work cause this condition?" To the question "How did injury happen?" McAtee wrote, ***"driving lift truck and performing regular duties at work."*** When McAtee visited Dr. Greggain, on March 11, 2004 (2 days after the alleged accident), Dr. Greggain recorded that McAtee denied recollection of any injury "***other than the work of the yardlift he operates and jostling***." Of greatest significance, however, is the fact that McAtee immediately reported his injury to his supervisor during his shift on March 9, 2004, and the First Report of Injury or Illness, which was prepared by Potlatch's Safety Manager, reads: "At approximately 11:00 P.M. on 3/9/2004, employee reported soreness of the back to his supervisor. Employee stated his back was sore due to ***bouncing in the Yard Lift***." Further it states that the "Specific Activity" and "Work Process" the "Employee Was Engaged in at Time of Occurrence" to be "Driving Yard Lift Truck." Therefore, the Commission's determinations that McAtee's testimony at oral hearing "differed substantially" is not supported by substantial and competent evidence since McAtee consistently stated that his injury arose while he was operating his fork lift on March 9, 2004, whilst experiencing jostling, vibrations, and bouncing.

Credibility of witnesses and evidence is a matter within the province of the Commission. *Zapata*, 132 Idaho at 515, 975 P.2d at 1180. As such, the Commission's findings on weight and credibility will not be disturbed on appeal if they are supported by substantial and competent evidence. *Id.* Because we find that the Commission's findings on McAtee's substantive

7

credibility are not supported by substantial and competent evidence, this Court is not bound by those findings on appeal and may review the factual record in a light independent of those findings.

2. <u>The Commission's conclusion that McAtee's testimony was the only evidence linking his herniated disc to March 9, 2004, is not supported by a review of the record.</u>

The Commission concluded that McAtee's injury was not the result of a compensable accident. We disagree. An accident occurs if "the strain of the claimant's ordinary and usual work resulted in violence to the physical structure of the body." *Hutton v. Manpower, Inc.*, 143 Idaho 573, 575, 149 P.3d 848, 850 (2006). A claimant "must prove not only that he was injured, but also that his injury was the result of an accident arising out of and in the course of his employment." *Neufeld v. Browning Ferris Indus.*, 109 Idaho 899, 902, 712 P.2d 600, 603 (1985). "An injury is considered to arise out of employment when a causal connection exists between the circumstances under which the work must be performed and the injury of which the claimant complains." *Spivey v. Novartis Seed, Inc.*, 137 Idaho 29, 33, 43 P.3d 788, 792 (2002). "If there is doubt surrounding whether the accident in question arose out of and in the course of employment, the matter will be resolved in favor of the employee." *Page*, 141 Idaho at 347, 109 P.3d at 1089 (citing *Dinius v. Loving Care & More, Inc.*, 133 Idaho 572, 574, 990 P.2d 738, 740 (1999)).

To prevail on a worker's compensation claim, a claimant must establish an accident by a preponderance of the evidence. *Painter*, 138 Idaho at 312, 63 P.3d at 439. "A claimant has the burden of proving a probable, not merely a possible, causal connection between the employment and the injury or disease." *Beardsley v. Idaho Forest Indus.*, 127 Idaho 404, 406, 901 P.2d 511, 513 (1995). The Commission concluded that McAtee did not carry his burden in proving his injury was the result of a compensable accident. The Referee stated:

> McAtee's testimony about what happened and whether his symptoms were acute is without other support of record. It provides the only link between the herniated disc and March 9, 2004. McAtee's initial reports to his doctors do not support a finding of a compensable accident. Some specific event or sudden onset of pain at a minimum is required . . . Here, the medical experts agree McAtee suffers from degenerative disc disease and a herniated disc. They agree that, in general, his work contributed to the development of his degenerative disc disease. The medical experts disagree about whether the herniated disc was caused by an event at work . . . The record does not include X-rays or MRIs taken before March 9, 2004, if any exist. McAtee had longstanding back complaints which included complaints of intermittent radiating pain . . . In the face of prior complaints of

8

infrequent radiating pain and McAtee's willingness to enhance his testimony, McAtee failed to show his condition was caused by a compensable accident.

Whether an injury arose out of the course of employment is a question of fact to be determined by the Commission. *Kessler*, 129 Idaho at 859, 934 P.2d at 32. Although this Court may review the Commission's factual findings, this Court must limit its review to determining whether the Commission correctly denied benefits after it applied the law to the relevant facts. *Id*. The Commission's factual findings will not be disturbed on appeal so long as they are supported by substantial and competent evidence. I.C. § 72-732; *Neihart*, 141 Idaho at 803, 118 P.3d at 135.

The claimant must prove to a reasonable degree of medical probability that the injury for which benefits are claimed is causally related to an accident occurring in the course of employment. *Jensen*, 135 Idaho at 412, 18 P.3d at 217 (citing *Hart v. Kaman Bearing & Supply*, 130 Idaho 296, 299, 939 P.2d 1375, 1378 (1997)); *Duncan v. Navajo Trucking*, 134 Idaho 202, 203, 998 P.2d 1115, 1116 (2000). "In this regard, 'probable' is defined as 'having more evidence for than against.'" *Soto v. Simplot*, 126 Idaho 536, 540, 887 P.2d 1043, 1047 (1994).

Our review of the record overwhelmingly indicates that McAtee was injured during his work shift on March 9, 2004. McAtee provided ample medical evidence that he experienced an acute onset of pain on March 9, 2004. Despite the Referee's finding that, "*McAtee's initial reports to his doctors do not support a finding of a compensable accident. Some specific event or sudden onset of pain at a minimum is required*," both Dr. Colburn and Dr. Greggain stated that the acute onset of pain which McAtee experienced on March 9, 2004, is consistent with a finding that his disc herniated at that time. A claimant need not show that he suffered an injury at a specific time and at a specific place. *Hazen v. Gen. Store*, 111 Idaho 972, 992, 729 P.2d 1035, 1055 (1986), *rehearing denied* (1986); *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 666 P.2d 629 (1983). The accident need only be reasonably located as to the time when and the place where it occurred. *See Spivey*, 137 Idaho at 33, 43 P.3d at 792 (holding that the claimant need only prove the day and place of the accident). Whether or not McAtee's disc herniation occurred at the moment he struck a drain ditch is not essential to a finding that his injury was the result of a work related accident on March 9, 2004. An employee incurs an injury in the course of employment, if the worker is doing the normal duties that he is employed to perform. *Spivey*, 137 Idaho at 34-35, 43 P.3d at 793-94. Both Dr. Colburn and Dr. Greggain stated that it was not

9

necessary that McAtee had hit a drain ditch or experienced some other catastrophic event for his disc to have herniated at that time. Both Dr. Colburn and Greggain stated that any of his normal work activities on March 9, 2004, could have resulted in his herniated disc. When an injury occurs on an employer's premises, a presumption arises that the injury arose out of and in the course of employment. *Kessler*, 129 Idaho at 859, 934 P.2d at 32 (1997); *Foust v. Birds Eye Div.*, 91 Idaho 418, 419, 422 P.2d 616, 617 (1967).

Here, neither Potlatch nor Surety offers any substantial evidence to contradict McAtee's production of medical evidence which indicates that his acute onset of pain during his work shift on March 9, 2004, represented an acute change in his condition corresponding with the onset of his disc herniation. The evidence which Potlatch and Surety assert repudiates McAtee's claims consists primarily of a series of forms from Dr. Greggain's office.

The most significant of these forms was an inquiry form that Surety sent to Dr. Greggain. On the form, Dr. Greggain circled "*no*" in response to the question, "*[o]n a more probable than not basis do you feel that Mr. McAtee sustained an injury on March 9, 2004?*" Surety officially denied McAtee's claim a week after it received this form back. However, Dr. Greggain did not merely check the "*no*" box but elaborated in handwriting on the form, "*I believe this is a culmination of longstanding mechanical and degenerative changes that finally led to disc failure and nerve entrapment.*" Additionally, Dr. Greggain made it clear in his deposition that, despite his checking the "no" box on this form, it was his medical opinion that McAtee's disc failure was a "*specific event*" and that "*[t]he symptoms that he reports on March 9th are consistent with nerve root compromise, and that happened acutely on March 9 without a specific known catastrophic injury.*" Because Dr. Greggain specifically stated in his deposition that it was his medical opinion that McAtee's injury occurred during his work shift on March 9, 2004, the box checked "no" on the Surety's inquiry form is not evidence that a reasonable mind would use to support the conclusion that McAtee's injury was not work related. Rather it merely illustrated Dr. Greggain's opinion that, although he believed the disc herniation occurred during McAtee's March 9, 2004, workshift, no catastrophic event triggered it.

An additional piece of evidence used to dispute McAtee's claim were the discrepancies in insurance claim forms originating from the office of Dr. Greggain. The forms dated March 12, 2004, contained checked boxes indicating McAtee's condition was related to employment and "other accident," but claim forms dated April 2 and 7, 2004, contained checked boxes indicating

10

McAtee's condition was not related to employment or "other accident."  However, Dr. Greggain testified that he did not personally check the boxes, and that he had never even seen the insurance claim forms, and that they were most likely filled out by a billing clerk, and thus had no bearing on his medical diagnosis but were rather related to billing purposes. Therefore, the checked boxes on these forms are not evidence that a reasonable mind would use to support a conclusion that Dr. Greggain believed McAtee's injury was not work related.

Also presented as evidence that McAtee's injury was not work related was a statement of continuing disability completed by Dr. Greggain's partner, Dr. MacKay, which contained boxes checked both "yes" and "no" with a question mark nearer the "no" box in response to the question, "Is condition due to injury or illness arising out of employment?" At his deposition, Dr. Greggain explained the ambiguities:

> No. ***I believe that the work -- the employment did contribute*** to, as I mentioned . . . in the previous record, the disc failure . . . And we have this sort of question all the time that comes up. Is this employment related? ***Certainly.*** Is it due to an injury arising out of employment? It's very difficult to identify an injury or illness specifically out of the employment . . . So, we -- Dr. MacKay and I both tend to be somewhat ambiguous to the answer to that question.

Because of the ambiguity inherent in checking both the "yes" and "no" boxes, and in light of Dr. Greggain's comments at deposition that he and his partner are intentionally ambiguous in answering that question, this form cannot be considered evidence that Dr. Greggain or Dr. MacKay believed McAtee's injury was not work related.

Surety and Potlatch also point to Dr. Greggain's referral to Dr. Dietrich where he states that McAtee recalled no injury "*other than the work of the yard  lift he operates and jostling*," to contradict McAtee's claim that he was injured at work. However, this phrasing does not indicate that Dr. Greggain believed that McAtee's disc herniation was not causally related to his work. It merely indicated that McAtee had not told him about any catastrophic event that induced his injury and that McAtee merely thought, in congruence with his oral testimony, that it was merely the jostling of the yardlift that hurt his back that night.  Dr. Greggain was questioned about this form in his deposition:

> A.  What specifically I was ruling out was that he hadn't bent over and picked up a hundred pound piece of wood and suddenly got a pain, or that he hadn't twisted or fallen or dropped something that had created the pain. ***He was doing his job. He wasn't doing anything unusual, other than the work he was employed to do, and while so doing that work he developed this pain.***

11

. . . .

Q. And it would be the work on the yard lift that he was operating and the jostling on March 9, 2004?

A. On the day of the pain onset, yes.

Q. Which was March 9?

A. March 9th.

This Court has held that no special verbal formula is necessary when a doctor's testimony plainly and unequivocally conveys his conviction that events are causally related. *Jensen*, 135 Idaho at 412-13, 18 P.3d at 217-18 (citing *Paulson v. Idaho Forest Indus., Inc.*, 99 Idaho 896, 901, 591 P.2d 143, 148 (1979), overruled on other grounds by *Jones v. Emmett Manor*, 134 Idaho 160, 165, 997 P.2d 621, 625 (2000) (holding that "To the extent *Dean v. Dravo Corp.*, 95 Idaho 558, 511 P.2d 1334 (1973) and *Paulson* . . . suggest a requirement of oral medical testimony in every case, the suggestion is disavowed.")). Rather even if a doctor expressly refuses to say the words "reasonable degree of medical probability," it can still be clear from his or her testimony that he or she considers that a claimant's injury more likely than not was caused by a work related accident. *Jensen*, 135 Idaho at 412, 18 P.3d at 217.

Dr. Greggain's reluctance to expressly state that McAtee's injury arose from a work related accident appears to stem from his hesitancy to draw a legal conclusion on whether an injury induced by normal work activities without some accompanying catastrophic event was the result of a work related "accident." On the other hand, Dr. Greggain's comments in deposition indicate that, although he was reluctant to use the word accident or injury, he clearly considered McAtee's disc herniation to be causally related to his work activities on March 9, 2004. He stated as follows:

Q. And the injury itself doesn't have to be catastrophic; it could be simply the bouncing and jostling as you've said.

A. Which under normal circumstances wouldn't be considered an injury. That would not be something where you go to work and expect that to be an injurious situation.

Q. Would it be keeping with your understanding of a disc failure that he could be bouncing on his machine or jostling and one particular jostle caused the disc to fail?

A. Any one of a small microtraumas can take place at any point in time, any of which can be the final straw that broke the camel's back.

Q. And in this case, we are talking about the straw the broke the camel's back because you said he was working relatively uninterrupted up to March 9?

A. That was my understanding.

12

Q. So, at that point for the symptoms to onset during his shift on March 9, what would you have expected then to have been the straw that broke the camel's back so to speak.

A. Any one of a number of activities he would engage in during the course of the evening of March 9th.

Q. And would this also be consistent, then, with the onset of his pain?

A. It would.

This Court has refused to adopt an overly narrow and overly technical construction of an "accident" requiring that an employee slip or fall, or that the machinery fail, or that the worker do something other than what he habitually does. *Wynn*, 105 Idaho at 104-05, 666 P.2d at 631-32. Under our Worker's Compensation law, "'Accident' means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs and which can be reasonably located as to time when and place where it occurred, causing an injury. I.C. § 72-102(18)(b). In *Page*, this Court held that the mere rising from a chair constituted an accident when it resulted in a sudden injury to an employee's knee. 141 Idaho 342, 109 P.3d 1084. In *Spivey*, this Court held that when a seed sorter reached across the belt and injured her shoulder during her normal work routine this constituted an accident. 137 Idaho 29, 33, 43 P.3d 788. In *Hammond v. Kootenai County*, 91 Idaho 208, 209, 419 P.2d 209, 210 (1966), we held that an accident occurred when a deputy sheriff with arterial disease died from a ruptured or occluded cerebral blood vessel after having climbed up and down a roadside embankment at a nighttime car crash scene.

In *Wynn*, a case which shares factual similarities to the instant one, we had the opportunity to address whether a disc rupture resulting from the regular vibrations and jostlings of heavy machinery could constitute a compensable injury under our worker's compensation law. That case involved an employee at Simplot's Gay Mine who suffered a disc herniation while operating a front end loader at work. *Id.* at 102-03, 666 P.2d at 629-30. Wynn presented uncontradicted medical evidence from his physician that his disc rupture was the result of the jarring and shaking of the heavy machinery. *Id.* at 102, 666 P.2d at 629. Simplot offered no direct testimony nor any evidence of any kind to rebut the uncontroverted testimony of Wynn's attending physician, which indicated that his injury occurred while he was working his front end loader. *Id.* at 105, 666 P.2d at 632. The Commission denied Wynn benefits, however, because of Wynn's failure to establish that his condition was caused by an accident in that "no distinct

13

mishap or event was established, which was causative of the claimant's problems." *Id*. at 103, 666 P.2d at 630. In that case we stated:

> [R]espondent on this appeal suggests that under the definition of "accident," it is required "that an injury to be compensible [sic] must be caused by an event or mishap which can reasonably be located as to time when and place where it occurred, conditions resulting from repetitive trauma over a period of time which is not reasonable are not compensible [sic]." We disagree.
>
> As to the "event" or "mishap," however it might be characterized, there is no question but that it took place at 7:30 p.m., March 17, 1980, on the premises of the employer at the Gay open pit mine approximately 17 miles from Pocatello while Wynn was engaged in his usual work of operating a front end loader. Hence, the sole basis for the Commission's holding must be that what occurred on that day at 7:30 p.m. was not an "accident" as contemplated by Idaho's Workmen's Compensation Act.
>
> We cannot agree with the Commission or Simplot's overly narrow and overly technical construction in view of the circumstances presented in the instant case. If the injury had occurred from the "event" which Wynn testified occurred some days earlier, i.e., that he, while working, stepped down from the loader, slipped on some ice and fell, the Commission and the respondent would evidently concede that such constituted a [sic] "accident" for which claimant would be compensated. If a small pebble had been thrown up from the wheels striking Wynn in the face and causing him to jerk his body and the injury had resulted, we doubt not that such would be deemed an "accident" for which claimant should be compensated.
>
> Although respondent Simplot invites the Court to engage in a semantic distinction analysis of whether an injury which results from repeated trauma falls within the category of occupational disease as distinguished from the category of industrial accident or neither, we decline the invitation. It is enough to note that claimant here, as indicated by the medical evidence, suffered his injury at a particular time, at a particular place, while engaged in his normal and ordinary work for his employer. The fact that Wynn's spine may have been weak and predisposed him to a ruptured disc does not prevent an award since our compensation law does not limit awards to workmen who, prior to injury, were in sound condition and perfect health. Rather, an employer takes an employee as he finds him.

*Id.*, at 104, 666 P.2d at 631 (internal citations omitted).

In resolving McAtee's claim, we find *Wynn* illustrative. McAtee presented medical evidence indicating that the onset of his pain and symptoms during his work shift on March 9, 2004, coincided with the specific event of a disc herniation. McAtee's medical evidence was unrebutted by any substantial and competent evidence. The fact that McAtee's spine may have been weak and predisposed him to a herniated disc does not prevent an award since under our compensation law an employer takes a worker as he finds him. *Id.* McAtee's own chiropractor,

Dr. Kurt Bailey, examined McAtee less than three months before his alleged accident and stated that there was no evidence that McAtee showed symptoms of a herniated disc, sciatica, or other serious back problems at this time. The fact that no catastrophic event triggered McAtee's disc herniation does not preclude a finding that his injury is compensable. McAtee's doctors agreed that any of a number of his normal work activities on March 9, 2004, could have been the trigger. "As this Court has repeatedly stated, 'If the claimant be engaged in his ordinary usual work and the strain of such labor becomes sufficient to overcome the resistance of the claimant's body and causes an injury, the injury is compensible [sic].'" *Id.* It was enough here that, while McAtee was engaged in his normal work duties, his back finally succumbed to the wear and tear of his years of hard labor at a specific point in time, i.e., his March 9, 2004, shift at Potlatch.

In light of Dr. Greggain's statements at deposition qualifying the medical forms which originated from his office, the evidence contained in those forms cannot be considered to be substantial evidence contradicting McAtee's presentation of medical evidence. Therefore, in the absence of any substantial and competent evidence which contradicts McAtee's presentation of medical evidence establishing that the specific event of his disc herniation was marked by an onset of pain and symptoms on March 9, 2004, while he was engaged in his normal work activities, we find the Commission's determination that "*McAtee's testimony about what happened and whether his symptoms were acute is without other support of record. It provides the only link between the herniated disc and March 9, 2004*," is not based on substantial and competent evidence. Consequently we reverse the order of the Commission denying McAtee benefits for the stated reason that he "*failed to show his herniated disc was caused by a compensable accident*" and remand for proceedings consistent with this opinion.

## B. McAtee's request for attorney fees and costs is granted.

Both McAtee and Respondents in this matter have requested attorney fees. Attorney fees are not granted to a claimant as a matter of right under worker's compensation law, but may only be affirmatively awarded under the circumstances set forth in I.C. § 72-804. *Wutherich v. Terteling Co., Inc.*, 135 Idaho 593, 595, 21 P.3d 915, 917 (2001); *Troutner v. Traffic Control Co.*, 97 Idaho 525, 528, 547 P.2d 1130, 1133 (1976). Idaho Code § 72-804 provides:

> **Attorney's fees—Punitive costs in certain cases.**—If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable

15

ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

*Id*. (emphasis in original).

McAtee asserts that he is entitled to attorney fees because the Respondents' denial of his claim was unreasonable. We agree. The record overwhelmingly indicates that McAtee herniated his disc during his work shift on March 9, 2004. Therefore, denial of his claim was unreasonable. For that reason, we award attorney fees and costs to Appellant for all stages of McAtee's claim including those below, on appeal, and on remand.

### IV. CONCLUSION

We reverse the order of the Commission denying McAtee worker's compensation benefits for the stated reason that he "*failed to show his herniated disc was caused by a compensable accident*" and remand for proceedings consistent with this opinion. Furthermore, we award attorney fees and costs to Appellant.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES, **CONCUR**.