IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37083

| | | |
|---|---|---|
| JONATHAN E. MOORE, SR., | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, January 2011 Term |
| | ) | |
| v. | ) | 2011 Opinion No. 7 |
| | ) | |
| WILLIAM A. MOORE, SR., dba MOORE | ) | Filed: February 2, 2011 |
| ENTERPRISES, Employer, and STATE | ) | |
| INSURANCE FUND, Surety, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

The Huntley Law Firm, PLLC, and Susan C. Brooks, Boise, for appellant. John F. Greenfield argued.

Augustine & McKenzie, PLLC, Boise, for respondent. Paul J. Augustine argued.

───────────────────

J. JONES, Justice.

Jonathan Moore, Sr., appeals the Industrial Commission's determination that he is not eligible for workers' compensation because he was an independent contractor rather than a covered employee when he was injured while performing work for his father, William Moore, Sr. We affirm.

**I.**
**Factual and Procedural Background**

William Moore, Sr. owned and operated a wholesale tire business called Moore Enterprises for several years before he passed away in March of 2008.[1] William's son, Jonathan Moore, Sr.

───────────────────

[1] William Moore, Sr., conducted business under the trade name Moore Enterprises. He was also the father of the claimant, Jonathan E. Moore, Sr. In order to avoid confusion regarding his role in these proceedings, either as the alleged employer or as a witness or as Claimant's father, when reference is hereafter made to the business it will be called Moore Enterprises and when the deceased Mr. Moore is referred to in his role as witness or father, he will be referred to as William.

1

(Claimant), had previously worked as an employee of Moore Enterprises during high school, and was also an employee in 1996. Following his employment with Moore Enterprises, Claimant started his own tire business called Morecedes Tire. As part of his business, Claimant regrooved tires and sold them to various businesses. Over the years, Claimant would occasionally sell regrooved tires to Moore Enterprises, or repair tires for Moore Enterprises, each time acting as an independent contractor doing business as Morecedes Tire. There were also several occasions when William and Claimant traveled to other states to sell regrooved tires. At times during these trips, Claimant and William would sell tires on behalf of their respective businesses, and at other times, Claimant would sell tires on behalf of Moore Enterprises. In addition to operating Morecedes Tire, Claimant began working as an entertainer in 2004, performing in various singing and acting jobs.

In the spring of 2005, Charles Jarvis, an employee at Moore Enterprises, developed carpal tunnel syndrome and was unable to work. Additionally, William's health had begun to fail, and he was struggling to continue to operate his tire business. The only other employee at Moore Enterprises during this time was Delores Moore, William's wife and Claimant's mother, who was the bookkeeper. According to Claimant, William contacted him about replacing Charles Jarvis as an employee at Moore Enterprises, and agreed to pay him $12.00 per hour for the work.

On the morning of May 17, 2005, Claimant went to William's residence, which was also where Moore Enterprises was located, to accompany William on a sales trip to Montana. According to Claimant, this was his first day on the job as an employee at Moore Enterprises. While Claimant was unhooking William's tire trailer, he was struck in the face by a jack handle. William was present at the time of the accident and transported Claimant to the hospital for medical treatment. As a result of the accident, Claimant broke several bones in his face and suffered a detached retina. Claimant subsequently had to undergo several surgeries as a result of his injuries. Claimant was never paid for the work he performed on May 17.

Following the accident, William sought advice from his insurance agent regarding the possibility of filing a claim under one of Moore Enterprises' insurance policies. William had several insurance policies, both business and personal, including a workers' compensation policy. Following the discussions with his insurance agent, William submitted a claim through his personal automobile insurance policy, rather than his workers' compensation policy, for coverage of Claimant's medical expenses. Claimant's expenses were covered through the automobile

medical policy up to the liability limits.

On August 15, 2006, approximately fifteen months after the accident, William filed a First Report of Injury or Illness with the State Insurance Fund (Surety). In December of 2006, Surety began to voluntarily pay Claimant's medical expenses. At some point, Surety refused to pay further expenses, and Claimant then filed a workers' compensation complaint. Surety filed an answer to the complaint, admitting the existence of an employer/employee relationship between Claimant and Moore Enterprises, but asserting that the claim was barred by the statute of limitations because it was not filed within one year of the accident. Surety also contended that the compensation previously paid to Claimant was in error. After a hearing on the matter, the Commission found that Claimant had timely filed his complaint.[2]

Prior to a hearing on the merits of Claimant's workers' compensation claim, Surety filed a Motion to Amend Answer and Add Issues for Hearing. In the motion, Surety asserted that two witnesses had been discovered who were expected to testify Claimant told them he was not working for William at the time he was injured but, rather, had injured himself unloading a boat trailer. Surety also indicated that during his deposition, Claimant had testified he was never paid by his father as an employee. The Referee granted the motion, and Surety filed an amended answer wherein it denied that (1) the accident alleged in the complaint actually occurred on or about the time claimed, and (2) an employer/employee relationship existed between Claimant and Moore Enterprises.

After a hearing on the merits of the workers' compensation claim, the Referee concluded that although Claimant was injured while unhooking a tire trailer for William, and not while unhooking a boat trailer, he was not entitled to workers' compensation because he was an independent contractor, and not a covered employee, on the day he was injured. The Referee based this conclusion on several facts.

First, the Referee examined Moore Enterprises' monthly check ledgers, which were maintained by Delores Moore. The check ledgers were broken into columns for payments related to wages, tire repairs, tire purchases, and other categories of expenses. The check ledgers indicated that on May 6, 2005, Moore Enterprises paid Morecedes Tire $350 for a tire repair. Morecedes Tire was then paid $250 for a tire purchase on May 20, 2005, three days after the

---

[2] The Commission found that because Moore Enterprises had willfully failed to file an initial report, the statute of limitations had been tolled.

accident. On two occasions in July of 2005, Moore Enterprises paid Morecedes Tire for tire purchases. The Referee also noted there were several other entries in the 2005 monthly ledgers identifying Morecedes Tire or Morecedes as the payee, but that there were no entries identifying any payment to Claimant, personally, for wages.

Next, the Referee focused on the fact that Delores Moore prepared and filed quarterly federal income tax returns and unemployment insurance wage reports on behalf of Moore Enterprises wherein she identified employees who had earned wages. The Referee pointed out that none of the 2005 quarterly returns or reports identified Claimant as an employee or wage earner, and Moore Enterprises' worksheet for April of 2005, through June of 2005, identified only Delores Moore, Ron Jacobsen,[3] and Charles Jarvis as employees. Additionally, the Referee considered that Delores Moore prepared W-2 forms on behalf of employees at Moore Enterprises, but she testified that she did not prepare one for Claimant for the 2005 tax year. The Referee noted that Delores Moore had prepared a W-2 for Robert Couch, a previous employee, who had earned only $200 working for Moore Enterprises.

Finally, the Referee referenced a recorded statement William had given to an investigator for Surety before he passed away. When William was asked whether Claimant was an employee of Moore Enterprises, he responded:

> He has been an employee of my business, he is, he is also in uh, he does uh, he's got a business um well he sings at different times, and stuff like that, so he's not um, he hasn't been a, he hasn't been a full time employee.

The Referee noted that the investigator "did not ask Claimant's father whether Claimant was an employee on May 17, 2005."[4] Based on all of the evidence, the Referee found that Claimant's history of dealing with Moore Enterprises for six or seven years prior to the accident, as well as at all times after the accident, was as an independent contractor, and that neither Claimant nor William considered Claimant to be working in any other capacity on May 17. The Referee also pointed out that it was not until long after William's automobile medical policy limit had been exhausted that either Claimant or William began to think about reasons the accident might be covered by workers' compensation.

---

[3] Ron Jacobsen was hired as an employee after the accident occurred.
[4] The Referee overlooked the investigator's inquiry as to whether William considered Claimant an employee on May 17, 2005, to which William replied, "I did at that time. . ."

4

The Commission adopted the Referee's proposed findings of fact and conclusions of law, denying Claimant's workers' compensation claim. Claimant timely appealed to this Court.

## II.
## Issues on Appeal

I.  Whether the Commission's determination that Claimant was an independent contractor and thus ineligible for workers' compensation is supported by substantial and competent evidence.

II.  Whether the Commission abused its discretion by failing to award Claimant attorney fees.

III.  Whether Claimant is entitled to attorney fees on appeal.

## III.
## Discussion

### A.  Standard of Review

When reviewing a decision by the Industrial Commission, this Court exercises free review over the Commission's conclusions of law, but will not disturb the Commission's factual findings if they are supported by substantial and competent evidence. *Stewart v. Sun Valley Co.*, 140 Idaho 381, 384, 94 P.3d 686, 689 (2004). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). The Commission's conclusions regarding the credibility and weight of evidence will not be disturbed unless they are clearly erroneous. *Excell Constr., Inc. v. State, Dep't of Labor*, 141 Idaho 688, 692, 116 P.3d 18, 22 (2005). This Court will not re-weigh the evidence or consider whether it would have drawn a different conclusion from the evidence presented. *Id*.

### B.  Employment Status

Idaho Code section 72-102 defines the terms "employee" and "independent contractor." Idaho Code section 72-102(12) defines an employee as "any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer." I.C. § 72-102(12). On the other hand, Idaho Code section 72-102(17) defines an independent contractor as "any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the result of his work only and not as to the means by which such result is accomplished." I.C. § 72-102(17). An individual must be an employee in order to obtain coverage under Idaho's workers' compensation laws.

*Livingston v. Ireland Bank*, 128 Idaho 66, 68, 910 P.2d 738, 740 (1995).

The relevant inquiry when determining whether a worker is an independent contractor or an employee is whether "the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results." *Kiele v. Steve Henderson Logging*, 127 Idaho 681, 683, 905 P.2d 82, 84 (1995). This Court generally looks at four factors when analyzing whether a right to control exists, including: (1) direct evidence of such right; (2) the method of payment for the work completed; (3) the party responsible for furnishing the major items of equipment; and (4) the right to terminate the employment relationship at will and without liability. *Hernandez v. Triple Ell Transport, Inc.*, 145 Idaho 37, 40, 175 P.3d 199, 202 (2007). While the Commission should consider each of the four factors, no one factor is controlling, and "the Commission must balance each of the elements present to determine the relative weight and importance of each." *Roman v. Horsley*, 120 Idaho 136, 137–38, 814 P.2d 36, 37–38 (1991).

Furthermore, "when a doubt exists as to whether an individual is an employee or an independent contractor under the workers' compensation laws, the Act must be given a liberal construction by the Commission in its fact finding function in favor of finding the relationship of employer and employee." *Livingston*, 128 Idaho at 69, 910 P.2d at 741. Although the law must be liberally construed in favor of finding that an employer/employee relationship exists, the facts need not be construed liberally in favor of the worker when there is conflicting evidence. *Id*. "Whether an injured worker is an independent contractor or employee is a factual determination to be made on a case-by-case basis from full consideration of the facts and circumstances." *Shriner v. Rausch*, 141 Idaho 228, 231, 108 P.3d 375, 378 (2005) (quoting *Stoica v. Pocol*, 136 Idaho 661, 663, 39 P.3d 601, 603 (2001)).

### 1.    Right to Control

The first factor that the Court examines is whether there is direct evidence of the employer's right to control the time, manner, and method of the work. In analyzing this factor, the Commission found that Claimant generally controlled his own work. The Commission analyzed the period of time from the late 1990's until 2008, and found that at all times before and after the accident, Claimant was an independent contractor who controlled his own work.

On appeal, Claimant argues that (1) the Commission impermissibly considered the course of dealing between the parties when determining Claimant's employment status on May 17; and

6

(2) regardless of whether Claimant was an independent contractor before and after the accident, he was an employee and under William's direct supervision and control on the day he was injured.

First and foremost, Claimant argues that the Commission erroneously considered the course of dealing between Claimant and Moore Enterprises. Claimant cites to this Court's decision in *Shriner v. Rausch*, 141 Idaho 228, 108 P.3d 375 (2005), for the proposition that the only time frame relevant to determining whether a claimant is an independent contractor or an employee is the time of the accident, and that the Commission cannot look outside that specific time frame in reaching its determination. Such a reading misconstrues this Court's holding in *Shriner*. In that case, the Court upheld the Commission's conclusion that Shriner, who had been hired by Rausch to build townhouse decks, was an independent contractor rather than an employee. *Id*. at 230, 108 P.3d at 377. Shriner had previously performed work as a subcontractor for the construction company, E & H, when E & H had been partnered with Rausch, but had not previously performed work directly for Rausch. *Id*. The Court ultimately held that "[t]here is substantial and competent evidence supporting the Commission's determination that Shriner was an independent contractor in his relationship with Rausch on the projects at issue. The relationship of Rausch and E & H on other business dealings does not change the result in this case." *Id*. at 232, 108 P.3d at 379.

*Shriner* does not stand for the proposition that the Commission cannot consider the course of dealings between the parties when conducting its analysis. Importantly, the Court in *Shriner* never indicated that the course of dealing *could not* be considered, but only that the course of dealing did not change the result in that case. If anything, the Court's statement was an explicit acknowledgement that the course of dealing was properly examined, but that such dealings either supported, or did not contradict, the Court's ultimate conclusion. Additionally, Claimant misconstrues the Court's language. In *Shriner*, the Court noted that "[t]he relationship of Rausch and E & H on other business dealings does not change the result in this case." *Id.* Notably, neither Rausch nor E & H was the claimant in that case and, therefore, the Court was referring to the relationship between the employer and a third party. Such a notation cannot be construed to stand for the proposition that the Court cannot consider the course of dealing between a claimant and the employer.

7

Nonetheless, Claimant argues that regardless of his status before and after the accident, he was under William's direct supervision and control on the day he was injured. To support his position, Claimant argues that he was taking over as a full-time employee in place of Charles Jarvis, who was unable to work as a result of a carpal tunnel injury. Claimant supports his argument that he was hired to replace Charles Jarvis by pointing to William's recorded statement wherein William states that "[i]f Charlie would not have had surgery[,] Charlie would have been there and Jonathan would not have been." He further supports his argument by pointing to Delores Moore's testimony[5] where she indicates that, prior to the accident, William had contacted Claimant about coming to work for Moore Enterprises like "when he was in high school." As such, Claimant argues that he was to begin work on May 17, 2005, as an employee and not as an independent contractor. Additionally, Claimant argues that because it was his first day on the job, there was no way for him to know which tires to load, or in which order to load them, without William's direction. He asserts that William was directing him to operate the jack that ultimately caused the injury and, thus, William had the right to control his work on the day he was injured.

The Commission acknowledged that there was testimony from Claimant that William told Claimant which tires to load and in which direction to load them on the day of the accident. However, the Commission found that such minimal instruction did not supersede the great weight of the evidence indicating that the relationship between the parties was that of an independent contractor and employer, both before and after the accident. Furthermore, the Commission found that Claimant's testimony regarding his skills and judgment as a businessman, in addition to his experience, established that he controlled the aspects of his work without oversight or instruction by William. Consequently, Claimant's argument that William told Claimant which tires to load and in which direction to load them, though contradictory, does not amount to a showing that the Commission's finding is not supported by substantial and competent evidence.

### 2. Method of Payment

The next factor that the Court must analyze is the method of payment. The Commission found that the method of payment is unclear in this case because Claimant was never actually

---

[5] The Referee made a specific finding that Delores Moore was a credible witness, but that she had no firsthand knowledge about the accident or Claimant's employment status.

paid for his work on May 17. However, the Commission found that every entry in Moore Enterprises' books for more than a year before and after the accident demonstrates Claimant was always paid as a separate business for work he performed for Moore Enterprises.[6] The Commission also noted Moore Enterprises' books showed that another employee was properly identified for tax withholding even when that employee had earned as little as $200 in one year and, thus, if Claimant's status as an independent contractor was to have changed, it would have been reflected in Moore Enterprises' books.

Claimant asserts that because the evidence did not clearly indicate the precise method of payment on the date of the accident, the Commission should not have considered the course of dealing between the parties to determine the usual method of payment. However, as noted previously, the Commission rightfully considered the course of dealing between the parties. Although the Claimant may be correct that the course of dealing between the parties may become less relevant the more distant in time that the Commission analyzes the information, it is illogical to suggest that the Commission cannot consider any period of time apart from the day of the accident. Indeed, taking Claimant's argument to the logical extreme, Claimant is asserting that the Commission could not consider the method of payment the day before or the day after the accident.

Furthermore, this Court has previously found that "[t]he method of payment test generally refers to whether income and social security taxes are withheld from a person's wages. Withholding is customary in an employer-employee relationship." *Livingston*, 128 Idaho at 69, 910 P.2d at 741. Thus, the Commission was well within its discretion to look to Moore Enterprises' tax returns and books when analyzing the method of payment factor. William, in his recorded statement, indicated that he did not report Claimant on his payroll and never withheld taxes from the money that was paid to him. More specifically, the conversation between William and the investigator was as follows:

> Investigator: Did you report your son on Jonathan on your business' payroll?
>
> William: I didn't.
>
> Investigator: Okay, Why not?

---

[6] Claimant also concedes in briefing that Moore Enterprises' business records indicate he was an independent contractor both before and after the accident.

William: Well because, because he was mostly of what he did at the time like I said was groove tires.

Investigator: Right

William: I just had him to pay his own taxes on that, be responsible for his own taxes on that.

Investigator: Okay

William: I mean I reported him as, as someone, whom I, whom I got to do a, a specific job for, he was paid by the piece.

Additionally, there is not one single document in Moore Enterprises' business records that would indicate Claimant was an employee. All of the payments made to Claimant, both before and immediately after the accident, were made to Morecedes Tire and, notably, these payments were *not* for wages. In fact, three days after the accident, a payment was made to Morecedes Tire for a tire purchase, which further demonstrates that Claimant's employment status did not change on May 17 from that of an independent contractor to that of an employee.[7] Moreover, a W-2 form was never filled out on Claimant's behalf, taxes were never withheld from the money paid to Claimant's company, and Moore Enterprises' reports, listing the employees of Moore Enterprises, did not list Claimant as an employee. Therefore, the Commission's finding that the method of payment factor strongly indicates Claimant was an independent contractor on May 17 is supported by substantial and competent evidence.

Claimant argues that he should have been paid for the work he completed on May 17, but that he was not paid because Delores Moore mistakenly forgot to pay him. He cites to the testimony of Delores Moore where, when asked if Claimant was paid for his work on the day of the accident, she responded "[t]hat was the last thing on my mind. I wasn't – I wasn't thinking I mean, I didn't even think about it." Claimant also points to William's recorded statement, wherein William indicated that he considered Claimant an employee of Moore Enterprises on May 17. While this evidence may conceivably support Claimant's argument, this Court is not in a position to reweigh evidence. It is the Commission's responsibility to weigh conflicting

---

[7] The record does not reflect when the tire was actually transferred, but it is clear payment was made on May 20, 2005. It is also worth noting that the check ledgers from 2005 denote payments to Morecedes Tire each and every month from July of 2005, through December of 2005. Additionally, the check ledgers from 2006 denote payments to Morecedes Tire nearly every month in 2006, except February, July, August, September, and October. However, none of these payments were made to Claimant personally, and none of the payments were for wages.

evidence and determine whether a claimant is an independent contractor or an employee.[8] Because there is substantial and competent evidence to support the Commission's findings, the findings will not be disturbed on appeal.

### 3.       Furnishing Major Items of Equipment

The third factor for the Court to consider is which party was responsible for furnishing the major items of equipment. The Commission found that the major item of equipment used in both Moore Enterprises' and Claimant's businesses was a regrooving machine, and that Claimant and Moore Enterprises each owned one. The Commission went on to find that, although Moore Enterprises owned the truck, trailer, and jack that were used on the day of the accident, such fact was of *de minimis* importance given that the sales trips, such as the one they planned to go on the day of the accident, were typically joint ventures.

Claimant argues that the major items of equipment factor is important proof of an employer/employee relationship, and the Commission should not have marginalized the fact that Moore Enterprises owned the equipment that was actually being used on the day of the accident. Claimant also asserts that the Commission erroneously found that a regrooving machine was the major item of equipment used in Moore Enterprises' business because it was not used by either party on the day of the accident. Finally, Claimant contends, once again, that the Commission violated this Court's rule in *Shriner* by considering evidence related to the past business relationship between Claimant and Moore Enterprises.[9]

Claimant's arguments are unavailing for several reasons. First, it is the Commission's responsibility to determine the relative weight and importance of each factor in the analysis, and

[8] While the Referee may have overlooked William's statement that he considered Claimant an employee on May 17, 2005, that response was tied into the premise that Claimant was an employee because Charles Jarvis was unable to work on that date as a result of his carpal tunnel injury. The Referee was aware of this latter contention. Considering the totality of William's statement to the investigator, wherein he was rather equivocal about Claimant's employment status, where he stated Claimant took care of his own taxes out of each payment he received, and where he testified Claimant was not reported as an employee on the company books, the response overlooked by the Referee is not particularly significant.

[9] Claimant also argues that the Referee erred by refusing to admit photographs that an insurance investigator took of the truck, trailer, and jack eight days after the accident. The Referee declined to admit the photographs because they had not been disclosed to Surety within ten days of the hearing as required by Commission rules. Claimant argues that this was in error because the photographs were impeachment evidence offered to discredit the witness who testified that Claimant had previously said he was injured while unloading a boat trailer. Claimant asks this Court to reverse the Referee's ruling and examine the photographs during this appeal. However, Claimant's argument is completely irrelevant to the issues before this Court. The Commission made a specific finding that the testimony regarding Claimant being injured while unloading a boat trailer was not credible. In fact, the Commission specifically found that Claimant was injured while loading a tire trailer for William. Thus, the witness' testimony was thoroughly impeached, and the issue of how Claimant was injured is not in question.

11

this Court will not disturb the findings unless they are not supported by substantial and competent evidence. In reaching its conclusion that the ownership of the truck, trailer, and jack on the day of the accident was of *de minimis* importance, the Commission referenced Claimant's testimony where he described the sales trips that Claimant and William had previously taken together. Claimant testified that on their sales trips, before and after the accident, they would travel to various locations and both sell their own tires. Claimant and William would then determine how much each had made out of the total sales, and apportion the costs of the trip according to the percentage of the profits made. Thus, Claimant's testimony supports the Commission's conclusion that the sales trips that Claimant and William typically took were joint ventures.

Additionally, at his deposition, Claimant testified that he would occasionally accompany William on sales trips, or travel alone, to sell Moore Enterprises' tires without being compensated. Claimant later changed his testimony and testified at the hearing that he was compensated by Moore Enterprises when he went alone to sell Moore Enterprises' tires. Given the evidence indicating that the business relationship before and after the accident was not that of an employer and employee, the Commission did not err in finding that the issue of who owned the truck, trailer, and jack on the day of the accident was of little importance. Furthermore, even though Claimant might be correct that a regrooving machine was not a major item of equipment used on the day of the accident, the fact that Claimant owned specialized equipment that he used to operate his own tire business simply adds support to the conclusion that the business relationship between Claimant and Moore Enterprises was that of an independent contractor and employer. Finally, Claimant's citation to *Shriner* and his argument that this Court cannot consider the course of dealing between the parties fails for the reasons mentioned above.

### 4. Right to Terminate Employment Relationship at Will

The last factor to consider is the right to terminate the employment relationship at will and without liability. The Commission found that analyzing whether either party had the right to terminate the employment relationship at will was a neutral factor because the issue of whether the relationship was an at will employment relationship, or involved independent businesses in a joint venture, was not adequately addressed by the facts in the record. The Commission pointed out that the record did not contain a written employment agreement or joint venture agreement.

12

Claimant argues that the evidence supports a finding that he was an at will employee because Delores Moore had testified that prior to the accident, William had contacted Claimant about coming to work for Moore Enterprises like "when he was in high school." Claimant argues that because his 1996 W-2 form indicates he was an at will employee, he was similarly an at will employee on May 17. Additionally, Claimant asserts that because he was hired to replace Charles Jarvis, whose 2003, 2004, and 2005 W-2 forms demonstrate that he was an at will employee, he was also an at will employee on the day he was injured.

The Court has noted that, "[o]nly in cases where either party had the right to terminate the relationship at will and without liability has this Court held such evidence to be indicative of an employee-employer relationship." *Kiele*, 127 Idaho at 684, 905 P.2d at 85. However, the Court has also recognized that although this factor may have been important to the analysis in the past, it is becoming less and less determinative of whether an employee/employer relationship exists. *J.R. Simplot Co. v. State Dep't of Employment*, 110 Idaho 762, 765, 718 P.2d 1200, 1203 (1986). The evidence propounded by Claimant does not give the Court any indication of whether either party had the right to terminate the employment relationship at will. Claimant simply repeats the arguments he makes under the other factors of the right to control test, and generally attempts to assert the existence of an employee/employer relationship. Claimant's arguments, however, do not establish whether there was an express or implied agreement regarding whether Claimant could terminate the relationship at will. Thus, the Commission did not err in finding that this factor did not weigh in favor of either party.

### C.     Claimant's Credibility

Claimant also argues that the Referee improperly discredited his testimony as unreliable. When analyzing whether Claimant was entitled to workers' compensation, the Referee determined that Claimant was not a credible witness and "by both demeanor and substance, Claimant's testimony [was] impeached." The Referee noted that Claimant's demeanor at the second hearing had changed from the first hearing before the Referee, he was evasive when answering questions, and there were several inconsistencies in his testimony. The Referee also noted that Claimant, "instead of giving factual answers to factual questions, [] responded by expressing his opinions about related subjects or by challenging how the questioner would have responded in such a situation." The Commission adopted all of the Referee's findings regarding

credibility. On appeal, Claimant argues that the findings with regard to his credibility are not supported by substantial and competent evidence.

Determining the credibility of witnesses and evidence is a matter within the province of the Commission. *Stevens-McAtee v. Potlatch Corp.*, 145 Idaho 325, 331, 179 P.3d 288, 294 (2008). When analyzing the Commission's findings regarding credibility, this Court has bifurcated the issue into two categories, "observational credibility" and "substantive credibility." *Painter v. Potlatch Corp.*, 138 Idaho 309, 313, 63 P.3d 435, 439 (2003). Observational credibility "goes to the demeanor of the appellant on the witness stand and it requires that the Commission actually be present for the hearing in order to judge it." *Id*. On the other hand, substantive credibility "may be judged on the grounds of numerous inaccuracies or conflicting facts and does not require the presence of the Commission at the hearing." *Id.* This Court will not disturb the Commission's findings regarding credibility if the findings are supported by substantial and competent evidence. *Id*.

In this case, the findings regarding Claimant's demeanor are properly classified as findings of observational credibility, while the findings regarding inconsistencies in the Claimant's testimony relate to substantive credibility. First, with regard to observational credibility, Claimant argues that there is not substantial and competent evidence to support the conclusion that he was not a credible witness because his demeanor was more subdued and less animated than it was at the first hearing. The Referee noted that Claimant attributed his change in demeanor at the second hearing to a severe headache caused by the cloudy weather. Claimant argues that because his doctor testified that changes in the weather could trigger the kind of severe sinus headaches he had been suffering from since the accident, it was unreasonable for the Referee to base its credibility determination on the difference in his demeanor.

Next, with regard to substantive credibility, Claimant argues that the Referee misstated and misconstrued his testimony when determining that various aspects of it were inconsistent. However, the Referee pointed to specific examples of when Claimant's testimony was inconsistent. First, the Referee noted that Claimant gave inconsistent testimony about how many trips he took after the accident and about how many days he worked. The Referee also pointed out that Claimant's testimony about being unable to work after the accident was undercut by Moore Enterprises' business records, which showed that Claimant continued to do business with Moore Enterprises as an independent contractor shortly after the accident.

14

While Claimant may be correct that there may have been a medical explanation for his change in demeanor from the first hearing to the second hearing, there is substantial and competent evidence in the record to support the finding that Claimant's testimony was inconsistent and, thus, he was not a credible witness. First and foremost, Claimant, in his answers to various interrogatories verified under oath, claimed that after the accident, he "did not resume work until 11/26/07," and that "in 2006, and almost all of 2007, [he] could not work in any capacity." However, Claimant later admitted, during the second hearing, that he operated his tire business in 2006 and 2007. Additionally, Moore Enterprises' business records indicate that Claimant continued to do business as an independent contractor very shortly after the accident. More specifically, Moore Enterprises' check ledgers demonstrate that on May 20, 2005, Claimant was paid $250 as an independent contractor, and beginning in July of 2005, through June of 2006, Claimant was paid several thousands of dollars as an independent contractor doing business as Morecedes Tire. Moreover, Claimant obtained an acting job as an extra in July of 2005, flew to California for an audition in January of 2006, and obtained various other acting jobs up through October of 2007. Claimant also testified during his deposition and in his verified answers to interrogatories that William had agreed to pay him $12.00 per hour for his work, but later testified that William had agreed to pay him $350 per week, which equals $8.75 per hour for a 40-hour week. Also, when William filled out his First Report of Injury or Illness, he left blank the portion of the form indicating the Claimant's wage, which further supports the Commission's conclusion that there was no agreement between Claimant and Moore Enterprises regarding wages as Claimant had testified. Thus, there is substantial and competent evidence to support the finding that Claimant was not a credible witness.

In sum, there is substantial and competent evidence to support the Commission's conclusion that Claimant was an independent contractor and not an employee for workers' compensation purposes. While Claimant points to evidence supporting his position that he was hired to replace Charles Jarvis as an employee at Moore Enterprises, such evidence is, at most, conflicting. Because there is substantial and competent evidence to support the Commission's finding, this Court affirms the Commission's decision to deny Claimant workers' compensation.

**D.      Attorney Fees for the Proceedings Before the Commission**

Claimant argues that if this Court finds that the Commission erred in denying him workers' compensation, the Commission abused its discretion by failing to award him attorney fees pursuant to Idaho Code section 72-804. Idaho Code section 72-804 authorizes attorney fees to be paid to a claimant when the employer or surety contests a claim for compensation without reasonable grounds to do so. I.C. § 72-804. However, because we find there is substantial and competent evidence to support the Commission's decision to deny Claimant workers' compensation, the Commission did not abuse its discretion in declining to award Claimant attorney fees.

**E.      Attorney Fees on Appeal**

Claimant also requests attorney fees on appeal pursuant to Idaho Code section 72-804 and Idaho Appellate Rule 41, arguing that Surety refused to pay workers' compensation benefits without reasonable grounds to do so. Because we affirm the Commission's decision to deny workers' compensation, Claimant is not entitled to attorney fees on appeal.

## IV.
### Conclusion

There is substantial and competent evidence in the record to support the Commission's conclusion that Claimant was an independent contractor and not a covered employee on the day he was injured. Thus, we affirm the Commission's determination that Claimant is not entitled to workers' compensation.  Costs to Respondents.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.

16