# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40393

|  |  |  |
|---|---|---|
| DALLAS L. CLARK, | ) | |
| | ) | Idaho Falls, August 2013 Term |
|     Claimant-Appellant, | ) | |
| | ) | 2013 Opinion No. 122 |
| v. | ) | |
| | ) | Filed: November 27, 2013 |
| SHARI'S MANAGEMENT | ) | |
| CORPORATION, Employer, and LIBERTY | ) | Stephen Kenyon, Clerk |
| NORTHWEST INSURANCE | ) | |
| CORPORATION, Surety, | ) | |
| | ) | |
|     Defendants-Respondents. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

Curtis & Porter, PA, Idaho Falls, for appellant. Paul T. Curtis argued.

Law Offices of Harmon & Day, Boise, for respondents. Kent W. Day argued.

_____

HORTON, Justice.

Dallas L. Clark appeals from an order of the Industrial Commission of the State of Idaho (Commission) denying her worker's compensation benefits because she failed to prove that an industrial accident occurred. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Clark started working for Shari's Management Corporation (Shari's) in September 2008 as an experienced server. Clark testified that on November 24, 2008, during a graveyard shift, she suffered a herniated disc in her back while lifting a heavy silverware tray onto a high shelf. She first sought medical treatment from a chiropractor, Dr. Justin Crook, at Orchard Naturopathic Center on December 11, 2008. Dr. Crook diagnosed Clark with sciatica and attributed her injury to lifting and twisting at work. On December 15, about three weeks after her injury, Clark informed Shari's that she had been injured at work.

1

On December 16, 2008, after the chiropractic treatment proved to be ineffective in reducing her pain, Clark sought medical care at the Community Care and Injury Center (Community Care) in Idaho Falls. There, she was again diagnosed with sciatica and prescribed medication to manage the pain. On December 19, Clark returned to Community Care because of her pain and was referred to the emergency room at Eastern Idaho Regional Medical Center (EIRMC). EIRMC records reflect that Clark was experiencing back pain with an "onset of several days ago." Clark was diagnosed with lumbar strain and she was prescribed medication for the pain.

On December 29, 2008, Clark sought medical care from Dr. Gary Walker at Walker Spine and Sport. Dr. Walker's records state that Clark's history of back and leg pain:

> [D]ates back to early November. [Clark] did not recall any particular injury but noted the onset of left lower extremity pain associated with work. It became sharper over time and has continued to worsen.

Dr. Walker prescribed medication for pain and ordered an MRI. On December 30, Clark underwent the MRI, which revealed a large left paracentral disc extrusion at L5-S1 which impacted the S1 nerve root. Due to Clark's desire to avoid surgery, Dr. Walker advised her to undergo a series of epidural steroid injections and engage in physical therapy. Clark did not complete physical therapy because the injections succeeded in reducing her pain.

In March 2009, Clark returned to Dr. Walker because her pain had returned. She received another injection, and Dr. Walker again recommended physical therapy. On March 19, Clark completed her first appointment of physical therapy with Stephanie Liddle. Liddle's treatment notes recorded that Clark:

> [H]as had a four-month history of pain into her left leg. She states the pain came on suddenly, but she is unaware of any specific injury to cause her pain. She denies any background of previous history of low back pain and contributes [sic] this episode to being a server/bartender for many, many years catching up to her and her not taking care of her body…

Clark participated in a few more sessions of physical therapy but then returned to Dr. Walker on April 7 because her pain persisted. Dr. Walker recommended consultation with a surgeon. Clark responded that she was leaving town and would "check with her insurance" before she proceeded further.

On April 22, 2009, Clark consulted Dr. Stephen Marano, a neurosurgeon, and James Cook, his physician's assistant, to discuss the possibility of surgery. Cook noted that Clark:

2

[B]egan having some left sided low back and left hip pain at work in early November. She cannot associate any injuries or trauma to the onset of her pain. She said that it just kind of started out of the blue. She thought it was maybe due to her standing funny.

On April 24, 2009, Zach Dummermuth, the general manager for Shari's, completed Clark's First Report of Injury (FROI). The FROI states that on November 24, 2008, Clark experienced an ache in her low back while she was "standing" and "making salad" and cites December 15, 2008, as the date that Clark notified Shari's of the accident. The FROI was received by the surety on April 28, 2009, and claims investigator Bradley Armstrong interviewed Clark on May 6. In her statement to Armstrong regarding the circumstances surrounding the accident, she attributed her injury to "standing wrong" at the salad bar and claimed her injury left her unable to lift a silverware tub into the water station.

On May 19, 2009, Armstrong sent a letter to Clark denying her claim because "there was no accident associated with" her injury. Clark decided to proceed with surgery and thereafter suffered complications from the surgery. On November 3, 2009, Clark filed a worker's compensation claim with the Industrial Commission. Clark's attorney requested an Independent Medical Evaluation (IME) from Dr. Benjamin Blair in a letter dated May 3, 2011. Dr. Blair replied in writing, stating that he believed Clark's injury was based on an accident that occurred at work because her story was convincing in light of the fact that she had no history of back pain. A separate IME was completed by Dr. Michael Hajjar at the request of the surety. Dr. Hajjar opined that Clark's medical records were inadequate to establish a causal connection with an industrial accident and later noted that Clark's delay in obtaining medical treatment after the alleged accident is evidence that the symptoms did not occur as a result of an industrial accident.

Following a hearing, on March 13, 2012, the Referee issued her Findings of Fact, Conclusions of Law and Recommendation (the Recommendation) which concluded that Clark's claim should be denied. The Commission adopted the Referee's findings and denied Clark's claim because she failed to prove that an industrial accident had occurred. Clark filed a motion for reconsideration and rehearing. The Commission issued a 21-page memorandum order denying Clark's motion in which it held that, although the Referee's Recommendation contained factual errors, nevertheless, Clark had failed to prove that an industrial accident had occurred. Clark timely appealed.

## II.     STANDARD OF REVIEW

In reviewing a decision of the Commission, this Court exercises free review over the Commission's legal conclusions. *Kessler ex. rel. Kessler v. Payette Cnty.*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). When doing so, this Court "must liberally construe the provisions of the worker's compensation law in favor of the employee, in order to serve the humane purposes for which the law was promulgated." *Jensen v. City of Pocatello*, 135 Idaho 406, 413, 18 P.3d 211, 218 (2000) (citing *Murray–Donahue v. Nat'l Car Rental Licensee Ass'n.*, 127 Idaho 337, 340, 900 P.2d 1348, 1351 (1995)). However, we limit our review to determining whether the Commission correctly denied benefits after it applied the law to the relevant facts. *Id.* The Commission's findings of fact will not be disturbed so long as they are supported by substantial and competent evidence. I.C. § 72-732; *Neihart v. Universal Joint Auto Parts, Inc.*, 141 Idaho 801, 803, 118 P.3d 133, 135 (2005). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Matter of Wilson*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). The Commission's findings regarding the weight and credibility of the evidence will not be disturbed so long as they are not clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). This Court does not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Neihart*, 141 Idaho at 803, 118 P.3d at 135. Rather, we must view all facts and inferences in a light most favorable to the party who prevailed before the Commission. *Kessler*, 129 Idaho at 859, 934 P.2d at 32.

## III.    ANALYSIS

### A. Substantial and competent evidence supports the Commission's determination that Clark's injury did not arise from an accident.

An employee is entitled to compensation under the Worker's Compensation Act when the employee suffers an injury that was caused by an accident "arising out of and in the course of any employment." *Dinius v. Loving Care and More, Inc.*, 133 Idaho 572, 574, 990 P.2d 738, 740 (1999). Idaho Code § 72-102(18) provides the following definitions:

> (a)     "Injury" means a personal injury caused by an accident arising out of and in the course of any employment covered by the worker's compensation law.

> (b)     "Accident" means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.

4

(c) "Injury" and "personal injury" shall be construed to include only an injury caused by an accident, which results in violence to the physical structure of the body. The terms shall in no case be construed to include an occupational disease and only such nonoccupational diseases as result directly from an injury.

"The words 'out of' have been held to refer to the origin and cause of the accident and the words 'in the course of' refer to the time, place, and the circumstances under which the accident occurred." *Spivey v. Novartis Seed, Inc.*, 137 Idaho 29, 33, 43 P.3d 788, 792 (2002). "A claimant has the burden of proving a probable, not merely a possible, causal connection between the employment and the injury. . . ." *Stevens-McAtee v. Potlatch Corp.*, 145 Idaho 325, 332, 179 P.3d 288, 295 (2008) (quoting *Beardsley v. Idaho Forest Indus.*, 127 Idaho 404, 406, 901 P.2d 511, 513 (1995)). However, whether an injury arose out of and in the course of employment is ultimately a question of fact to be determined by the Commission. *Kessler*, 129 Idaho at 859, 934 P.2d at 32.

Clark asserts that the Referee and the Commission erroneously required "her to prove 'unusual exertion or mishap as a cause' of her injury." Certainly, "an 'accident' does not require a slip or fall, external trauma to the worker's body, or unusual exertion." *Konvalinka v. Bonneville Cnty.*, 140 Idaho 477, 479, 95 P.3d 628, 630 (2004). Tellingly, however, Clark provides no citation to the record in support of this claim of legal error. We have carefully reviewed the Recommendation and the Commission's Order Denying Reconsideration and Rehearing. The language that Clark purports to quote is nowhere to be found in either document. We find this claim of legal error to be without merit.

Clark also asserts that the standard that the Commission "should have applied provides that the *injury* in Claimant's case is the 'unexpected, undesigned, unlooked for mishap' or 'accident.'" In this regard, Clark is simply wrong. As we noted in *Konvalinka*, "'[a]ccident' and 'injury' are certainly interrelated definitionally. An accident must cause an injury, and an injury must be caused by an accident. The terms are not synonymous, however." *Id.* at 480, 95 P.3d at 631 (citations omitted). The standard that Clark asserts the Commission should have applied would eliminate the causal connection between an injury and an accident required by I.C. § 72-102 and redefine "accident" as "injury." This Court is required to "give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011). For that reason, we are unable to find that the Commission erred by failing to apply the standard that Clark proposes.

5

Clark "contends that the evidence is clear, substantial, and competent that she suffered a compensable injury to her back at work waitressing on or about November 24, 2008." In *Neihart*, we noted that this "is not the test applied by this Court on appeals from the Industrial Commission." 141 Idaho at 803, 118 P.3d at 135. Rather, the inquiry is " 'whether substantial and competent evidence supports the Commission's findings.' " *Id.* (quoting *Luttrell v. Clearwater Cnty. Sheriff's Office*, 140 Idaho 581, 583, 97 P.3d 448, 450 (2004)).

Clark's briefing devotes substantial effort to describing factual errors contained in the Recommendation. We agree that the Referee made several obvious mistakes in her factual findings. If the Referee were the ultimate decision-maker, these factual errors might be of significance to this appeal. However, it is the Commission, not the Referee, which made the final decision as to Clark's claim. The Commission acknowledged the Referee's errors, but found the mistakes to be "harmless error, in that they do not form the basis of the Commission's decision against Claimant." The Commission explained that its decision to deny Clark's claim was "because she failed to prove that an industrial accident occurred" and that it reached this conclusion because "the information contained in [Clark's] medical records [was] more credible than [Clark's] later statements and testimony." The Commission found that Clark's later accounts of the claimed accident "are so contradictory as to be unreliable," explaining:

> Claimant's descriptions actively conflict with each other. In her interview with Surety, she stated that 1) she first felt a twinge of back pain while she was *standing by the salad bar* with Michelle, her supervisor, and that in response to the pain, she joked about her weight; and 2) she later felt a sharp pain while lifting the silverware tray, so she set down the tray, set her tables, and then lifted the almost-empty tray onto the shelf.
>
> Later, at deposition, Claimant testified that 1) she first felt pain while she was *bending* to clean the salad bar reach-ins, and 2) that she later felt pain while lifting the silverware tray. Only this time, instead of putting down the tray and setting tables, Claimant fell and the *tray came down on top of her*. Aaron Swenson heard the noise and came rushing out to help Claimant. He picked up the silverware and helped Claimant to a booth, where she sat for the rest of her shift, punching orders into the computer.
>
> Finally, at hearing, Claimant testified that 1) she first felt pain after *standing up* while cleaning the salad bar reach-ins, and 2) she later felt a sharp pain while lifting the silverware tray, which caused her to drop it. The tray landed on the water station, but its momentum carried it to the floor, and though Claimant herself was falling, she was able to catch herself on the water station's ledge.

6

Recently, in *Harris v. Indep. Sch. Dist. No. 1*, 154 Idaho 917, 303 P.3d 604 (2013), we discussed our previous decisions relating to the scope of the Commission's authority to make credibility decisions:

> "Determining the credibility of witnesses and evidence" is within the province of the Industrial Commission. *Moore v. Moore*, 152 Idaho 245, 254, 269 P.3d 802, 811 (2011). This Court has split its review of credibility determinations into two categories: observational credibility, and substantive credibility. *Id.* The former "goes to the demeanor of the [witness] on the witness stand and it requires that the Commission actually be present for the hearing in order to judge it." *Id.* "[S]ubstantive credibility may be judged on the grounds of numerous inaccuracies or conflicting facts and does not require the presence of the Commission at the hearing." *Id.* If the Commission's credibility findings are supported by substantial, competent evidence, we will not disturb them. *Id.*
>
> We have upheld Commission findings of lack of substantive credibility where a claimant makes inconsistent statements regarding the industrial accident and the symptoms resulting therefrom. For example, in *Painter v. Potlatch Corp.*, 138 Idaho 309, 314, 63 P.3d 435, 440 (2003), we upheld the Commission's substantive credibility findings where:
>
>> [Painter, the employee] did not adequately explain why he recorded the alleged incidents on his calendar on the days they occurred but did not report them to his doctors or to his Employer until weeks later. [Painter] never reported the details of the incidents to co-workers. At one point, [Painter] testified that he was uncertain about the location of the forms for "major" versus "minor" incidents, but Employer has only one form and makes no such distinction. Finally, inconsistencies exist between [Painter's] initial workers' compensation claim and his later testimony describing the incidents.
>
> 138 Idaho at 314, 63 P.3d at 440. The discrepancies found in the employee's description of the accident thus led this Court to conclude that "substantial, credible evidence supported the Commission's finding that" Painter lacked credibility. *Id.* . . .
>
> On the other hand, where employees claiming workers' compensation have proffered consistent—though not identical—testimonies, this Court has held that they have substantive credibility. For instance, in *Stevens–McAtee v. Potlatch Corp.*, 145 Idaho 325, 329, 179 P.3d 288, 292 (2008), an employee initially gave a vague account of a forklift accident, but later " 'improved' or 'enhanced' " his testimony at hearing by adding a specific detail—that while driving the forklift, he hit a drain ditch. The Commission felt that this addition was a substantial change that damaged his credibility. *Id.* We disagreed because, "[a]lthough [the employee's] descriptions as to the cause of his injury were more vague prior to oral hearing," he "consistently maintained that his injury arose from the jostling and vibrations of his forklift." *Id.* at 331, 179 P.3d at 294. In the face of this

7

consistency, the Court held the Commission incorrectly concluded that the employee's testimony "differed substantially" at hearing. *Id.*

*Id.* at 925-26, 303 P.3d at 612-13.

In this case, the Commission recognized our holding in *Stevens-McAtee* and explicitly identified the standard that it applied in making its credibility determination: "we look for substantial consistency supported by the other evidence in the record." This standard is the appropriate standard for evaluating substantive credibility.

The Commission explained why it found Clark's statements were not substantially consistent:

> Either she fell, or she did not fall; either she fell to the floor, or she was able to catch herself; either she dropped the tray, or she set it down; either she set tables after the accident, or she rested in a booth for the remainder of her shift; either the silverware tray actually "came down on" Claimant, or it fell without impacting her–these are not minor details, easily misremembered; these are material facts about how the accident occurred. A heavy silverware tray "coming down on" a fallen person could easily cause injury, perhaps even serious injury, depending on how heavy it was and what part of the body was impacted, and it defies belief that if this actually happened, Claimant would have neglected to mention it to Surety.

The Commission then explored the differences between Clark's accounts of her injury contained in the early medical records and her testimony at deposition and hearing:

> She did not mention any such accident to her medical providers from December 2008 to April 2009. It is true, as Claimant points out, that she "associated" her pain with work–but only in the general sense of her years of work "catching up to her," not in the specific sense of suffering a workplace accident. Claimant pleads that she has "less that an 8th grade education," that her understanding of words such as "injury" and "trauma" are different than a lawyer or doctor's understanding, and that is therefore unremarkable that the medical records state that Claimant reported no injuries or trauma associated with the onset of her pain. This argument might be more compelling if the records did not also contain the statement that Claimant's pain began "out of the blue." One does not need to be a lawyer, a doctor, or a highly educated person to be able to explain that her back began hurting when she lifted a heavy tray at work. Claimant was certainly able to say those words in her interview with Surety's investigator, as well as at deposition and hearing. The Commission does not expect Claimant to use "magic words," nor does the Commission expect Claimant to have a doctor or lawyer's understanding of the significance of the words "injury" or "trauma," but the Commission does expect patients to give a reasonably accurate history of the onset of their symptoms to their medical providers.

8

The facts identified by the Commission appear in the record. Thus, we hold that there is substantial evidence supporting the Commission's determination that Clark's testimony at deposition and hearing lacked substantive credibility.[1]

Clark relies heavily upon our decision in *Hazen v. Gen. Store*, 111 Idaho 972, 729 P.2d 1035 (1986), in support of her claim that the Commission's decision should be overturned. This reliance is misplaced. In *Hazen*, this Court affirmed the Commission's denial of a worker's compensation claim, finding that the claimant's disk herniation was the result of the "aging process" and "not the result of employment." *Id.* at 973, 729 P.2d at 1036. There, although Hazen had discussed her injury with her employer, she did not attribute it to an accident at work and did not file a Notice of Injury with the Industrial Commission. *Id.* It was only after Hazen underwent surgery that she first attributed her injury to a work-related accident. *Id.* The employer and employer's surety submitted a deposition of an orthopedic surgeon who testified that there was no specific "accident" which caused Hazen's injury, but that her injury was most likely due to "gradual onset" over a long period of time. *Id.* The Commission chose to believe the orthopedic surgeon's testimony and the Court held that there was substantial and competent evidence supporting the Commission's decision. *Id.* at 973-974, 729 P.2d at 1036-1037.

Having carefully reviewed the record before us, we are struck by the similarity of the facts in this case to those presented in *Hazen*. As with the claimant in *Hazen*, Clark discussed her injury with her employer but did not attribute the injury to a specific accident at work until after discovering that she required surgery. Clark told medical providers that she did not know what

---

[1] Given the Commission's detailed explanation why it did not find Clark to be credible, it is surprising that a glaring contradiction in Clark's testimony that the Referee identified was not included among those which the Commission identified as supporting its conclusion that Clark lacked substantive credibility. While receiving medical treatment at Community Care, Clark's doctor explained how to properly lift heavy items at work so as not to strain her back. Clark received care from Community Care on December 16, 2008, over twenty days after the date of her alleged accident. However, in her deposition, Clark testified that she was trying to hold the silverware tray on the day of the alleged accident like her doctor at Community Care had taught her.

> Q. And when you were carrying it, about how high was it? According to your body, in other words, how high was it?
> A. I was trying to carry it because they told me – the doctor I went to at the Community Care, he said to try to always keep my shoulders center with my knees, you know, not to try to bend outside of that area. And so I tried - - I always would carry - - I would carry it towards my body.

> Clark's statements and medical records show that Clark received no medical treatment prior to the alleged accident. Therefore, there is no way that she would have known about this advice prior to the alleged accident.

the cause of her pain was, attributing it to a variety of reasons including nothing at all ("out of the blue"), "standing funny," her weight, working many years as a waitress without taking care of her body, and work in general. Although Clark indicated her injury might be work-related, she never suggested that her injury was due to an accident at work until she filed a worker's compensation claim after discovering her need for surgery. As we did in *Hazen*, we find that substantial evidence supports the Commission's finding that the Claimant's injury was not caused by an industrial accident. We therefore affirm.

**B. Neither party is entitled to an award of attorney fees.**

Both Clark and Shari's request attorney fees and costs. The entirety of Clark's discussion of attorney fees on appeal is as follows: "Attorney's fees are requested per I.C. §72-313." In order to recover an award of attorney fees on appeal, a party must support the request both by citation to legal authority and argument. "The mere citation to a code provision, without explaining how the cited code section provides for an award in the case or providing argument of how the section applies to the circumstances in the case, is insufficient for an award of attorney fees on appeal." *Athay v. Rich Cnty.*, 153 Idaho 815, 827, 291 P.3d 1014, 1026 (2012) (citing *Clair v. Clair*, 153 Idaho 278, 291, 281 P.3d 115, 128 (2012)). In addition to these requirements, the party must actually prevail in the appeal. *Friends of Farm to Mkt. v. Valley Cnty.*, 137 Idaho 192, 201, 46 P.3d 9, 18 (2002).

In this case, Clark has managed to achieve a "dubious trifecta" similar to that which we observed in *City of Meridian v. Petra Inc.*, 154 Idaho 425, 450, 299 P.3d 232, 257 (2013). She has not prevailed. She has directed us to a code provision unrelated to awards of attorney fees,[2] a fact which we recognized over four years ago. *See Bradford v. Roche Moving & Storage, Inc.*, 147 Idaho 733, 736, 215 P.3d 453, 456 (2009) ("Claimant requests an award of attorney fees pursuant to Idaho Code § 72–313. That statute has nothing to do with the awarding of attorney

---

[2] Idaho Code § 72-313 provides:

Whenever any claim is presented and the claimant's right to compensation is not in issue, but the issue of liability is raised as between an employer and a surety or between two (2) or more employers or sureties, the commission shall order payment of compensation to be made immediately by one or more of such employers or sureties. The commission may order any such employer or surety to deposit the amount of the award or to give such security thereof as may be deemed satisfactory. When the issue is finally resolved, an employer or surety held not liable shall be reimbursed for any such payments by the employer or surety held liable and any deposit or security so made shall be returned.

fees.") Finally, Clark has not favored us with an argument or explanation as to why she is entitled to attorney fees. Accordingly, we deny her request.

Respondents' request for attorney fees on appeal fails in only one respect. Although Respondents have prevailed and advanced argument, the statute upon which they rely, I.C. § 12-121, does not apply to this appeal because worker's compensation cases are not civil actions. *Id*. at 737, 215 P.3d at 457 (citing *Swanson v. Kraft*, 116 Idaho 315, 322, 775 P.2d 629, 636 (1989)). Therefore, we deny the request for attorney fees. As the prevailing parties, Respondents are entitled to their costs on appeal.

## IV.    CONCLUSION

We affirm the Commission's denial of Clark's worker's compensation claim and award costs, but not attorney fees, to Respondents.

Chief Justice BURDICK and Justices EISMANN and W. JONES **CONCUR**.

J. JONES, J., specially concurring.

I concur in the Court's opinion because, despite the Referee having made several obvious mistakes in her factual findings as mentioned by the Court, the Commission corrected those mistakes in its Order Denying Reconsideration and Rehearing and the corrected decision is supported by substantial and competent evidence. I write this special concurrence because several recent cases indicate a failure on the part of the Commission to carefully review some of the Referee's proposed findings and recommendations and correct inappropriate findings that are conspicuous from the record. *See Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 758−60, 302 P.3d 718, 726−28 (2013); *Henry v. Dep't of Correction*, 154 Idaho 143, 149−56, 295 P.3d 328, 534−41 (2013) (J. Jones, J., dissenting). In this case, the Commission merely approved, confirmed, and adopted the Referee's proposed findings of fact and conclusions of law as its own, without apparently giving the document a critical review.

Had the Commission carefully reviewed the Referee's findings before adopting them, it would have discovered:

(1) The Referee found that "the Claimant did not file a [first report of injury] until after [a] surgical recommendation was made," implying that she did not notify the Employer of her injury until she learned she needed surgery. The Referee was correct that the Claimant did not file an FROI because the Employer filed one, which clearly indicated that it had notice of the injury as of December 15, 2008, four months before the recommendation for surgery was made.

11

(2) The Referee found it to be "undisputed that Surety never paid Claimant any benefits through December 11, 2009." In fact, the Surety did pay a number of medical expenses on Claimant's behalf, as well as for an impairment rating exam by Dr. Walker that the Surety ordered.

(3) With regard to the testimony of Aaron, a fellow employee who testified on behalf of Claimant, the Referee found that "Aaron's testimony is consistent with an intentional plan to assist Claimant in misleading this tribunal." The Commission could have determined this finding to be inappropriate because the Referee continued, "[t]here is inadequate evidence to establish this as a fact; however, Aaron's testimony alone is not credible to corroborate Claimant's testimony about what happened on the night of her accident."

(4) The Referee implied that Claimant's attorney tried to influence Dr. Blair's determination of causation, although the attorney's letter cited in support of this finding simply does not support the implication.

The Commission is charged with the responsibility of making findings of fact and conclusions of law and a final order. Simply rubberstamping a recommended decision that contains obvious errors or inappropriate conclusions does not fulfill that responsibility.